**David W. McRAE, II, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–828.

United States Court of Veterans Appeals.

July 3, 1996.

David W. McRae, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Susan A. Wuchinich, Washington, DC, were on the pleadings for appellee.

Before MANKIN *, HOLDAWAY, and IVERS, Judges.

PER CURIAM:

The appellant, David W. McRae, II, appeals the March 27, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which reviewed the VA regional office's (VARO) conduct regarding the appellant's participation in the vocational rehabilitation program. In addition to appealing the denial of his claims by the Board, the appellant seeks monetary damages of seven million dollars and contends that his constitutional rights have been violated. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a).

The appellant has filed numerous motions with the Court including, but not limited to, a

* Judge Mankin was assigned to and participated in this case, but died before its final disposition.

motion to seal the records, a motion for jury trial, a motion for the Court to "step aside" for having violated his constitutional and civil rights, a motion for summary judgment, a motion for default judgment, and a motion for declaratory judgment. The Court has ruled on these motions and they warrant no further discussion.

On September 8, 1992, the Court received notice that the appellant had brought a civil action against it in the United States District Court for the Southern District of Ohio. The Court stayed the proceedings while the appellant sought adjudication of his claims. On December 3, 1993, the Court was informed that the district court had issued a decision granting summary judgment against the appellant. On May 20, 1994, the Court was informed that the United States Court of Appeals for the Sixth Circuit had affirmed the district court's ruling. On August 17, 1994, the Court lifted the stay of proceedings. For the reasons set forth below, the Court will affirm the Board's decision.

## I. FACTUAL BACKGROUND

The appellant served in the U.S. Army from October 1980 to March 1984 when he was medically discharged. He was granted service connection for bilateral shoulder disability and hearing loss with a total disability rating of 50%. In April 1984, the appellant filed an application for vocational rehabilitation. The VARO arranged a counseling session for the appellant and determined that he was eligible for participation in the vocational rehabilitation program. In the fall of 1984, the VARO approved a rehabilitation plan for the appellant to study business at Ohio State University. When the appellant received failing grades, the appellant and the case manager agreed that the appellant would need different training. After several contentious counseling sessions, the appellant submitted a plan for pursuing courses in commercial photography at the Columbus College of Art and Design (CCAD). The VARO approved the plan and the appellant was reinstated into the vocational rehabilitation program for semester II of the 1986–1987 school year.

During the 1987–1988 school year, a dispute arose between the appellant and the VARO over the amount of the appellant's training expenses. In the fall of 1987, the veteran had discussed his expected purchases with his vocational counselor. The expenses for photography supplies were expected to be between $500.00 and $1000.00, but some of the materials would also be used the following semester. Expenses in the amount of $1,236.28 were approved during the fall semester. On February 2, 1988, the VARO received a bill for additional supplies totalling $1,027.61. The appellant's counselor determined that $2,300.00 was beyond "a credible required expense for the average student." *See* 38 C.F.R. § 21.212(b) (1995) ("VA will authorize only those supplies which are required ... [t]o be used by similarly circumstanced non-disabled persons in the same training or employment situation. . . .").

On February 8, 1988, based on the appellant's history of excessive spending, the VARO wrote the appellant a letter stating that he was granted $500.00 for expenses (excluding textbooks) for semester II of the 1987–1988 school year. The appellant met with his case manager later that month and requested approval of $2,300.00 for supplies. The case manager attempted to arrive at an agreement with the appellant as to reasonable expenses for his particular courses. The appellant was not amenable to having a discussion, stating that all items totalling $2,300.00 were necessary, and no agreement was reached. In March 1988, based on a supply list received from CCAD, the case manager increased the appellant's allowable expenses to $800.00 for the semester, but only for required supplies. That same month, the appellant went to the VARO to discuss his expenses. The appellant told his case manager that the appellant was entitled to all of the supplies that he, the appellant, deemed were necessary and that the VARO had no authority to determine what supplies were required. The case manager informed the appellant that if an understanding was not reached regarding the purchasing of supplies, the appellant would be placed in interrupted status at the end of the semester. *See* 38 C.F.R. § 21.197 (1995). The appellant then demanded to speak to the case manag-

er's supervisor and left without settling the dispute. The appellant was placed in interrupted status.

In April 1988, the appellant sent a letter to the VARO requesting a hearing on, or a review of, the status of his participation in the program and the VARO's failure to "uphold its mon[e]tary responsibility." The VARO, in a June 1988 response, explained that the appellant had been placed in interrupted status based on the last contact he had had with the case manager, when he had been warned of the possibility of being placed in interrupted status if an agreement regarding the appellant's expenses could not be reached. The letter specifically stated that his participation in the program had not been terminated, but had been suspended temporarily.

In a July 1988 letter, the VARO requested that the appellant furnish specific information regarding his disagreement with the VARO. A September 1988 letter in the record indicates that the appellant had never responded to the July 1988 letter and was advised that he was currently charging supplies to the VARO without authorization. He was also reminded that he did not have authorization to participate in the program after semester II of the 1987–1988 school year. The letter stated that the appellant had not expressed any interest in returning to the program and that the appellant's current unauthorized spending confirmed that the appellant was not willing to cooperate with the VARO's rules and procedures. A meeting was requested to determine what the appellant wanted to do.

On October 4, 1988, the appellant went to the VARO and again contested the issue of expenses. The VARO again advised the appellant that he was not authorized to purchase any supplies during semester I of the 1988–1989 school year. The following day, the appellant wrote a letter to the VARO, giving a deadline of October 30, 1988, for the VARO to justify his being placed in interrupted status. He alleged that the case manager was trying to keep him from continuing his participation in the program and demanded that the case manager be removed from his case or he would have to "pursue

criminal charges against [him]." At the appellant's request, his case manager was removed from the case and replaced by the VARO's Chief of Training and Employment. The VARO responded that the appellant's suspension from the program was caused by his excessive spending. The VARO noted in its response that VA authorizes payment for those supplies which are required

(1) To be used by similarly circumstanced non-disabled persons in the same training or employment situation. . . .

. . . .

(e) *Supplies for special projects and theses.* The amount of supplies that the V.A. may authorize for special projects, including theses, may not exceed the amount generally needed by similarly circumstanced nonveterans in meeting course or thesis requirements.

38 C.F.R. § 21.212(b)(1) and (e) (1995). It further noted that the average veteran in the program, studying commercial photography, had spent roughly $330.14 per semester, whereas the appellant had spent an average of $840.68 per semester. The VARO offered to reinstate the appellant with an allowance of $400.00 per semester for supplies and stated that, if the appellant wanted more money for expenses, he would be required to obtain prior approval. The VARO concluded that the appellant had abused VA procedures by purchasing excessive amounts of required supplies, nonetheless the VARO eventually paid the entire $2,300.00 in expenses. The VARO also notified him of his appellate rights. In January 1989, the appellant filed a Notice of Disagreement (NOD). That same month, the VARO responded to the appellant's NOD, by holding a hearing. In February 1990, the Board remanded two issues that the appellant had raised in his "substantive appeal." The remanded issues were resolved.

On March 27, 1992, the Board issued the decision on appeal which addressed four issues: (1) whether VA is obligated to furnish, without regard to cost, all supplies requested by the veteran during his period of vocational rehabilitation training; (2) whether VA improperly delayed establishing funding limits for supplies for vocational rehabilitation

training during semester II of the 1987–1988 school year; (3) whether VA's action in placing the veteran in interrupted status due to unsatisfactory conduct and cooperation, thereby denying him reentrance into training during semester I of the 1988–1989 school year, was proper; and (4) whether VA should pay the cost of tuition, books, supplies, and equipment incurred during unauthorized training during semester I of the 1988–1989 school year. The Board concluded that the limits created by the VARO were proper, that there was no improper delay in establishing funding limits or reimbursing the appellant for expenditures, that the placement of the appellant in interrupted status was proper, and that the VARO was not obligated to pay the cost of the appellant's unauthorized training during the 1988–1989 school year. A timely appeal to this Court followed.

Acting without benefit of counsel, the appellant has raised scores of issues and "claims" before the Court. The Court will primarily focus its analysis on the issues which were fully developed and adjudicated by the Board.

## II. ANALYSIS

This case involves the application of a number of VA regulations. Because the regulations involved have remained unchanged since 1988, the Court will cite to the most recently published regulations.

### A. Case or Controversy Requirement

■ In order to obtain review by this Court, a person must be adversely affected by the decision being appealed. 38 U.S.C. § 7266(a); *Landicho v. Brown*, 7 Vet.App. 42, 48–49 (1994); *Shoen v. Brown*, 6 Vet.App. 456, 457 (1994). There must exist a case or controversy before the Court. *Waterhouse v. Principi*, 3 Vet.App. 473, 474–75 (1992); *Mokal v. Derwinski*, 1 Vet.App. 12 (1990). The Court finds the issues of whether VA was obligated to furnish all supplies requested by the appellant during his participation in the program, and whether VA improperly delayed establishing funding limits for supplies during semester II of the 1987–1988 school year, present no case or controversy. The VARO has paid for all of the supplies purchased by the appellant during authorized training.

### B. Placement in "Interrupted" Status

The Board concluded that the RO's action in placing the veteran in interrupted status before semester I of the 1988–1989 school year was proper. A veteran's vocational rehabilitation program may be temporarily suspended or placed in "interrupted" status for a variety of reasons, including unsatisfactory conduct and cooperation by the veteran. 38 C.F.R. § 21.197(c)(2). A veteran's responsibilities as a participant in the program are described in 38 C.F.R. § 21.362 (1995). When a veteran is seeking or being provided with training and rehabilitation services, the veteran must:

(1) Cooperate with VA staff in carrying out the initial evaluation and developing a rehabilitation plan;

(2) Arrange a schedule which allows him or her to devote the time needed to attain the goals of the rehabilitation plan;

(3) Seek the assistance of VA staff, as necessary, to resolve problems which affect attainment of the goals of the rehabilitation plan;

(4) Conform to procedures established by VA governing pursuit of a rehabilitation plan including:

(i) Enrollment and reenrollment in a course;

. . .

(v) Securing supplies; and

(vi) Other applicable procedures.

(5) Conform to the rules and regulations of the training or rehabilitation facility at which services are being provided.

38 C.F.R. § 3.362(c).

VA staff members are responsible for monitoring a veteran participating in the vocational rehabilitation program and are required to take action when satisfactory conduct and cooperation have not been maintained. 38 U.S.C. § 3111; 38 C.F.R. §§ 21.362, 21.364 (1995). Provisions concerning unsatisfactory conduct and cooperation are contained in 38 C.F.R. § 21.364.

(a) *General.* If VA determines that a veteran has failed to maintain satisfactory

conduct or cooperation, VA may, after determining that all reasonable counseling efforts have been made and are found not reasonably likely to be effective, discontinue services and assistance to the veteran, unless the case manager determines that mitigating circumstances exist. . . .

(b) *Unsatisfactory conduct or cooperation exists.* When the case manager determines that the veteran's conduct and/or cooperation are not in conformity with provisions of § 21.362(c), the case manager will:

(1) Discuss the situation with the veteran;

(2) Arrange for services, particularly counseling services, which may assist in resolving the problems which led to the veteran's unsatisfactory conduct or cooperation;

(3) Interrupt the program to allow for more intense efforts, if the unsatisfactory conduct and cooperation persist. . . .

■ In the decision on appeal, the Board reviewed the evidence and made a factual finding that the veteran displayed unsatisfactory conduct and cooperation. The Court reviews findings of material fact under a "clearly erroneous" standard. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990). A finding of fact is clearly erroneous when "although there is enough evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Id.* at 52. "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, [the Court] cannot overturn them." *Id.* at 53.

■ The evidence of record provides, at the least, a "plausible" basis for finding that the appellant exhibited unsatisfactory conduct and cooperation. The record shows that the appellant did not conform to VA rules for the securing of supplies and was unwilling to conform to those rules. *See, e.g.,* 38 C.F.R. § 21.212(b) ("VA will authorize only those supplies which are required . . . [t]o be used by similarly circumstanced non-disabled per-

sons in the same training or employment situation . . . ."); 38 C.F.R. § 21.212(d) (giving VA discretion to authorize supplies needed, but not specifically required); 38 C.F.R. § 21.212(f) ("case manager is responsible for the authorization of supplies"); 38 C.F.R. § 21.218 (1995) ("Prior authorization of supplies by the case manager is required, except for standard sets of books, tools, or supplies which the facility requires all trainees or employees to have."); 38 C.F.R. § 21.224 (1995) ("Supplies are to be furnished under the most careful checks by the case manager as to what is needed by the veteran to pursue his or her program."). The evidence of record further shows that the appellant has failed to respond to reasonable requests by the VARO, has displayed a hostile and threatening attitude, and has otherwise failed to meet his responsibilities as a participant in the vocational training program. *See* 38 C.F.R. § 3.362(c). The Board's finding that the appellant exhibited unsatisfactory conduct and cooperation is amply supported by the record. It is not "clearly erroneous." Further, the Court finds that VA personnel fulfilled their obligations to the appellant, by notifying him, by attempting to discuss the situation with him, and by making reasonable efforts to provide him with counseling. *See* 38 U.S.C. § 3111; 38 C.F.R. §§ 21.197, 21.362, 21.364. He was given every opportunity to state his case. In consideration of the foregoing, the Court will affirm the Board's conclusion that the VARO's placement of the appellant in interrupted status was proper.

## C. Payment of Expenses During Unauthorized Training

■ Although the appellant was authorized training during the 1987–1988 school year, VA did not authorize training for the subsequent school year, 1988–1989. Instead, the appellant was in interrupted status. Once a veteran is placed in interrupted status, his case remains in interrupted status until he takes the necessary steps to reenter the program or his program is discontinued. *See* 38 C.F.R. §§ 21.197, 21.198 (1995). The appellant has advanced no legal authority to support his position that VA is obliged to pay for expenses he incurred during a period when he was in interrupted status and was

not authorized for training. The VA regulatory scheme strictly limits VA's financial obligation for training, equipment, and supplies. *See, e.g.,* 38 C.F.R. §§ 21.210, 21.212, 21.214, 21.216, 21.220, 21.222, 21.224 (1995). The appellant was informed, orally and in writing, that he was in interrupted status and that he was not authorized to enroll in classes or purchase supplies. The Court will affirm the BVA's determination that VA is not obligated to pay for expenses incurred by the appellant during unauthorized training.

## D. Other Issues Raised on Appeal

The appellant has made numerous claims that his constitutional rights have been violated. He claims violations of, *inter alia,* the First, Fourth, Fifth, Thirteenth, and Fourteenth Amendments of the Constitution. For example, he asserts that VA violated the Thirteenth Amendment prohibition on involuntary servitude by "requiring this [a]ppellant to attain an unpaid, uncompensated[ ] position as a photographer[']s [a]ssistant[ ] ... [to get job experience.]" The Court finds no merit in the appellant's claims of constitutional violations, many of which border on frivolity. *See Chemical Engineering Corp. v. Marlo, Inc.,* 754 F.2d 331, 335 (Fed. Cir.1984) ("An appeal clearly hopeless and unquestionably without any possible basis in fact or law, as here, 'wastes the time of this court and of the opposing counsel, and imposes unnecessary costs of the parties and on fellow citizens whose taxes support this court and its staff.'" (quoting *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1486 (Fed.Cir. 1984))). Suffice it to say we find that the appellant was treated by the RO with utmost patience, scrupulousness, and fairness. He was given proper notice of all intended actions. He had full opportunity, which he exercised fully, to state his side of the controversy. The appellant has also requested monetary damages of seven million dollars. The Court has no authority to order the monetary damages that the appellant seeks. *Mason (Sangernetta) v. Brown,* 8 Vet.App. 44, 59 (1995); *Martin (Donald) v. Principi,* 3 Vet.App. 553, 555 (1992). Likewise, the remaining issues raised by the appellant in his numerous filings have no legal merit.

## III. CONCLUSION

The Court AFFIRMS the decision of the Board.