Daniel M. WING, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.

No. 96–94.

United States Court of Veterans Appeals.

Feb. 25, 1998.

Daniel M. Wing, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

KRAMER, Judge:

The appellant, Daniel M. Wing, appeals an October 12, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to vocational rehabilitation training pursuant to chapter 31 of title 38, United States Code. Record (R.) at 4–17. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will vacate the decision of the BVA and remand the matter for further proceedings.

## I. RELEVANT BACKGROUND

The appellant served on active duty as an officer in the U.S. Air Force from July 1979 to July 1987. R. at 22. In May 1989, a VA regional office (RO) granted service connection for a movement disorder with multiple somatic complaints. R. at 88–90. The RO assigned a 100% disability rating for the movement disorder, effective July 21, 1987. R. at 84. In July 1989, the appellant applied for vocational rehabilitation benefits to assist him "in obtaining a doctorate's degree in optometry, with a minor in pharmacy." R. at 92. In evaluating his claim, the VA counseling psychologist assigned to the appellant opined that because of the appellant's advanced degrees, experience, and basic skills, additional training was not necessary in order for the appellant to obtain suitable employment. R. at 108. In a December 1989 discussion, the appellant and his designated VA counseling psychologist discussed the appellant's ability to perform his then current job as a college and education programs counselor at Fort Drum. R. at 110. During this discussion the appellant declined to travel to Syracuse, New York, for an additional medical evaluation of his disability; to submit a position description of his job; and to submit records to support his claim that he could not adequately perform his current job, on the grounds he had not been employed long enough for such records to have been developed; and declined assistance seeking new employment. R. at 110, 126–27. The RO denied the appellant's claim in January 1990 (R. at 112), and the appellant filed a Notice of Disagreement (R. at 125). The appellant testified before the Board in September 1991. R. at 189. In November 1991, the Board remanded his claim for aptitude and psychological testing as well as a psychiatric examination. R. at 216. The Board's decision instructed that if the claim could not be granted following the completion of these developments, it should be returned to the BVA for further appellate consideration. *Id.*

Upon remand, the RO sent the appellant a one-page letter stating,

> The Board has determined that additional testing services be *offered* to you to evaluate your vocational situation. It was recommended that areas of consideration be a psychiatric evaluation, aptitude testing and psychological evaluations. Additional information concerning your current situation as well as a position description from your previous job at Fort Drum should be included.

R. at 219 (emphasis added). The letter gave the appellant the choice of checking one of these two statements: "I do wish to have additional evaluation procedures and provide the additional information requested" or "I do not wish to take part in the evaluations and request that my case be returned to the [BVA]." *Id.* Upon receipt of this letter, the appellant checked the line indicating that he wanted his claim returned to the BVA for further adjudication, and he returned the letter to the RO. R. at 256. The RO then returned the case to the BVA. R. at 287. In an October 12, 1995, decision, the Board determined that the appellant had not met the

criteria for chapter 31 vocational rehabilitation training and that VA was not required to provide the appellant with any further assistance because his failure to undergo the offered testing constituted lack of cooperation. R. at 5. The decision of the Board included the following statement:

> The Board recognizes the veteran's argument that his counseling psychologist failed to provide detailed information regarding the requested examinations. However, it must be emphasized that in the Board's November 1991 remand, it was specifically indicated that aptitude tests and psychiatric examination were necessary for the purpose of determining the veteran's eligibility for Chapter 31 benefits, as well as the feasibility regarding completion of his vocational goals. The Board notes that the veteran has declined to cooperate, and thus further services were appropriately declined.

R. at 16.

## II. ANALYSIS

### A. Relevant Regulations

Three "basic requirements" for eligibility for chapter 31 vocational rehabilitation training are set out in 38 C.F.R. § 21.1(b) (1997). The first requirement is that of a basic entitlement to services under 38 C.F.R. § 21.40 (1997). Section 21.40 requires that the veteran have both a qualifying service-connected disability (38 C.F.R. § 21.40(a)) and an employment handicap (38 C.F.R. § 21.40(b)). Under § 21.40(a), the qualifying service-connected disability requirement is satisfied by "a service-connected disability of 20 percent or more which is ... compensable under 38 U.S.C. chapter 11." 38 C.F.R. § 21.40(a)(1). An employment handicap is "an impairment of the veteran's ability to prepare for, obtain, or retain employment consistent with the veteran's abilities, aptitudes, and interests." 38 C.F.R. § 21.51(b) (1997). "The veteran's service-connected disability need not be the sole or primary cause of the employment handicap but it must materially contribute to the impairment." 38 C.F.R. § 21.51(c)(2). The second requirement under § 21.1(b) is that the services necessary for training and rehabilitation must be identified by VA and

the veteran. 38 C.F.R. § 21.1(b)(2). The third requirement is that VA and the veteran must develop a written plan describing the veteran's employment goals and the program through which those goals will be achieved. 38 C.F.R. § 21.1(b)(3).

A veteran seeking chapter 31 vocational rehabilitation training will be assigned a specific case status. *See* 38 C.F.R. § 21.180(a) (1997). The initial case status is "applicant" status. Once the existence of a qualifying service connected disability is established under § 21.40(a), an "initial evaluation" is scheduled. 38 C.F.R. § 21.50(a) (1997). If the veteran attends the appointment for an initial evaluation the veteran progresses to "evaluation and planning status." *See* 38 C.F.R. § 21.180(e)(1)-(4). During evaluation and planning status, it is determined whether the veteran has an employment handicap under § 21.40(b) and whether achievement of a vocational goal is feasible. *See* 38 C.F.R. §§ 21.184(a)(1), 21.50 (1997). When a decision concerning achievement of a vocational goal cannot be made during the initial evaluation, 38 C.F.R. § 21.57 (1997) provides for an extended evaluation, and the veteran's case may be assigned to "extended evaluation status." 38 C.F.R. § 21.57(a); *see* 38 C.F.R. § 21.188 (1997) (outlining the procedures for moving an applicant from "evaluation and planning" status to "extended evaluation" status). Both §§ 21.50 and 21.57 are contained in part 21, subpart A, title 38, Code of Federal Regulations, under a subheading "Initial and Extended Evaluations."

Section 21.50(e) states:

> The purpose of the initial evaluation and the steps in the process shall be explained to the veteran and his or her cooperation requested. If the veteran does not cooperate in the initiation or completion of the initial evaluation the counseling psychologist *shall make a reasonable effort through counseling to secure the veteran's cooperation.* If the veteran's cooperation cannot be secured, the counseling psychologist shall suspend the initial evaluation until such time as the veteran cooperates. *The veteran will be informed of any suspension of the initial evaluation, the reasons*

*for this action, and the steps necessary to resume the evaluation.*

38 C.F.R. § 21.50(e) (emphasis added). Additionally, § 21.184(c)(2)(iii) allows for termination of evaluation and planning status if the veteran fails to cooperate. Although § 21.57 does not contain a specific provision concerning the veteran's cooperation, § 21.188(d)(i)-(iii) allows for termination of extended evaluation status in the event the veteran fails to participate in an extended evaluation.

A subheading of Part 21, subpart A, of 38 C.F.R. entitled "Conduct and Cooperation," includes two especially pertinent sections: 38 C.F.R. § 21.362 (1997) states, "(b) *VA responsibility.* VA shall make a reasonable effort to inform the veteran and assure his understanding of ... [t]he specific responsibilities of the veteran in the process of developing and implementing a program of rehabilitation services, especially the specific responsibility for satisfactory conduct and cooperation" (38 C.F.R. § 21.362(b), (b)(3)); and 38 C.F.R. § 21.364 (1997) provides that "[i]f VA determines that a veteran has failed to maintain satisfactory conduct or cooperation, VA may, *after determining that all reasonable counseling efforts have been made and are found not reasonably likely to be effective,* discontinue services and assistance to the veteran." (38 C.F.R. § 21.364(a) (emphasis added)). *See McRae v. Brown,* 9 Vet.App. 229, 233–34 (1996).

If a veteran fails to comply with the "Conduct and Cooperation" provisions, the veteran may be moved from "evaluation and planning" status or "extended evaluation" status to, first, "interrupted" status with suspension of services, and then to "discontinued" status where services to the veteran may be terminated. *See* 38 C.F.R. §§ 21.197–.198 (1997). This process also applies to decisions to suspend services under § 21.50(e) *supra. See* 38 C.F.R. § 21.197(b)(1). "The purpose of assignment to *interrupted* status is to assure that all appropriate actions have been taken to help the veteran continue in his or her program before discontinuing benefits and services." *Id.* (emphasis in original). If a veteran has a service-connected disability rated 50% or more disabling, then before the veteran can be placed on "discontinued" status, the vocational rehabilitation and counseling officer must conduct a "special review" of the proposed discontinuance action. 38 C.F.R. § 21.198(b)(7). Finally, whenever a veteran's status is changed, the veteran must be fully informed of that fact by a letter that states the reasons for the change in status (38 C.F.R. § 21.180(d)), and be afforded prior notification of any adverse action (38 C.F.R. § 21.420(d) (1997)).

### B. The Board's Decision

It is not contested that the appellant has a qualifying service-connected disability. R. at 7. It appears that the appellant was in the process of an initial evaluation to determine whether he fulfilled the remaining basic requirements when his cooperation first became an issue in December 1989. R. at 8. It is not clear whether the appellant had "evaluation and planning" or "extended evaluation" status at the time his cooperation was requested after the 1991 remand. The Board found, based on the information gathered prior to December 1989, that the appellant did not have an employment handicap because there was no showing that he was unable to "obtain employment consistent with the veteran's abilities, aptitudes, and interests" under 38 C.F.R. § 21.51(b). R. at 16. It was also noted that the feasibility of the appellant's choice of optometry was questionable. R. at 15. Therefore, the BVA determined that the veteran did not qualify for vocational rehabilitation training. R. at 8. The Board further found that the appellant's conduct in declining the testing offered to him after the 1991 remand constituted lack of cooperation, and that further services were appropriately declined. R. at 16.

The Board's 1995 decision cites to 38 C.F.R. §§ 21.50, 21.362, and 21.364 as the bases for discontinuing services to the veteran because of his lack of cooperation. R. at 8, 15. However, the Board may not apply regulations piecemeal. *See Ridings v. Brown,* 6 Vet.App. 544, 546 (1994) (remanded for BVA failure "to discuss, or provide reasons or bases for not discussing, all of the elements to be considered ... pursuant to 38 C.F.R. § 1.965(a)"); *Austin v. Brown,* 6 Vet. App. 547, 552 (1994) (finding that where BVA

failed to apply facially applicable regulations, or to give reasons or bases explaining why such regulations were not applicable, its decision on appeal must be set aside); *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990) (BVA is not free to ignore VA's duly promulgated regulations). Furthermore, the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). In its statement of reasons and bases for its findings and conclusion in this case, the Board devotes only one sentence to addressing whether the provisions of §§ 21.50, 21.362, and 21.364 regarding VA's duties to inform and counsel have been followed. That sentence suggests merely that a close reading of the 1991 BVA remand should have informed the appellant of the necessity of further testing. R. at 16.

■ Subsequent to its 1991 remand, the BVA failed to address the following: what explanation of the purpose of the initial evaluation was provided to the appellant and how the appellant was informed of any suspension of the initial evaluation, the reasons for the suspension, and the steps necessary to resume the initial evaluation (38 C.F.R. § 21.50(e)); how the appellant was informed of his responsibility for satisfactory conduct and cooperation (38 C.F.R. § 21.362(b)); what reasonable counseling efforts have been made (38 C.F.R. § 21.364(a)); what change in status had been made (38 C.F.R. § 21.180–.198); what notification of any such change he had received (38 C.F.R. §§ 21.180(d), 21.420); and the applicability of special review and any actions taken under that provision (38 C.F.R. § 21.198(b)(7)).

In light of the foregoing, the Board's decision that VA appropriately declined further services to the appellant was error. *Cf. McRae,* 9 Vet.App. at 234 (holding that discontinuation of services under chapter 31 was appropriate where veteran had been notified of need to cooperate and consequences of not cooperating, several personal contacts had been made, and veteran was given opportunities to participate in counseling designed to secure his cooperation).

### III. CONCLUSION

The October 12, 1995, BVA decision is VACATED and the matter is REMANDED to the Board for further proceedings consistent with this opinion. On remand the Board should proceed expeditiously to make determinations with an adequate statement of reasons or bases as to what status the appellant's claim has been assigned under §§ 21.180–.198 and whether VA has complied with all applicable regulations regarding status changes and declination of services. *See* Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court); *Allday,* 7 Vet.App. at 533–34.