**James P. DAVIS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 95–1169.

United States Court of Veterans Appeals.

April 29, 1997.

Samuel M. Tumey, Liberty, MS, was on the briefs for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Peter M. Donawick, Washington, DC, were on the brief for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

KRAMER, Judge:

The appellant, James P. Davis, appeals a July 31, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for colon cancer and skin cancer as residuals of exposure to ionizing radiation and denying an increased rating for bilateral hearing loss, currently evaluated as 50% disabling. Because in the appellant's brief he waived his appeal regarding an increased rating for bilateral hearing loss, the Court considers the appellant to have abandoned this claim on appeal and, accordingly, will not review the BVA decision with respect to it. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty from August 1942 to January 1946. Record (R.) at 22. In July 1987, he was diagnosed with carcinoma of the sigmoid colon (R. at 87, 89, 93–103), and in June 1991, he was diagnosed with basal cell carcinoma below the left eye (R. at 156, 186). In July 1991, the appellant filed with a VA regional office (RO) a claim of service connection for colon cancer and skin cancer as residuals of asserted exposure to ionizing radiation in service. R. at 161.

In an August 1991 VA radiation examination, given as part of a compensation and pension examination, the examiner noted that the appellant had been present in the Hiroshima area during the American occupation of Japan, that he had not worn a film badge, and that he had not participated in clean-up activities. R. at 201. In February 1992, the RO deferred its rating action pending its receipt of a dose estimate from the Defense Nuclear Agency (DNA) in the Department of Defense (DOD) and an advisory opinion from the VA Central Office. R. at 219–21. Although the appellant's service records were destroyed by the fire at the National Personnel Records Center, the RO conceded that he was present at Hiroshima and was exposed to ionizing radiation. R. at 219. Later that same month, VA requested a dose estimate from the DNA. R. at 225–26. In March 1992, the program manager of "Nuclear Test Personnel Review" program of DNA, through a purportedly authorized signator whose signature is illegible, confirmed that the appellant had been in the Hiroshima area during the American occupation of Japan and reported that, "[u]sing all possible 'worst case' assumptions, the maximum possible dose any individual serviceman [who was at either Hiroshima or Nagasaki for the full duration of the American occupation of Japan] might have received from external radiation, inhalation, and ingestion is less than one rem." R. at 233. In April 1992, the RO referred the claim to the VA Director of the Compensation and Pension Service. R. at 238–39. In May 1992, the Director of the Compensation and Pension Service in turn requested a radiation review from the Chief Medical Director (now the Under Secretary for Health). R. at 252. In July 1992, Susan H. Mather, M.D., M.P.H., Assistant Chief Medical Director for Environmental Medicine and Public Health, reported:

1. .... [The veteran] is reported to have received a maximal dose of 1.0 rem gamma irradiation with virtually no neutron irradiation at age 25. The gamma dose was reconstructed. He was a long-

time smoker. Mr. Davis developed adeno-carcinoma of sigmoid colon some 42 years and basal cell carcinoma some 46 years after his supposed exposure.

2. Skin cancer has been attributed to ionizing radiation only at high doses, usually at several hundred rads. (*Health Effects of Exposure to Low Levels of Ionizing Radiation (BEIR V)* [) ], 1990, pages 325 to 327. Basal cell carcinoma may have followed doses as low as 40 rad[s]. (Mettler and Moseley, 1985, pages 116 and 117; Albert and Shore in et al, 1986, pages 335 to 345)

It is calculated that exposure to 20.2 rad[s] or less at age 22 provides 99 percent credibility that there is no reasonable possibility that it is as likely as not that the veteran's colon cancer is related to his exposure to ionizing radiation. (CIRRPC Scientific Panel Report No. 6, 1988, page 29). Information in *Health Effects of Exposure to Low Levels of Ionizing Radiation (BEIR V)*, 1990, pages 301 to 303, generally supports this value. Among Japanese A-bomb survivors no excess of colon cancer has been "evident at does below 1.0 Gy", i.e.[,] 100 rads, and risks have increased only after 'intense irradiation'.

3. The veteran's dose was much lower than the cited value and it is highly unlikely that his diseases can be attributed to exposure to ionizing radiation in service. R. at 261. Later that same month, the Director of the Compensation and Pension Service wrote to the RO that, after reviewing the above medical opinion "and following review of the evidence in its entirety, it is our opinion that there is no reasonable possibility that the veteran's disabilities were the result of such exposure." R. at 263. In August 1992, the RO denied the appellant's claim for service connection for colon cancer and skin cancer as residuals of exposure to ionizing radiation. R. at 265–67. The appellant filed a Notice of Disagreement in November 1992 (R. at 286), and a VA Form 9, Appeal to the Board of Veterans' Appeals, in May 1993 (R. at 314). On July 31, 1995, in its decision here on appeal, the BVA denied, inter alia, service connection for colon cancer and skin cancer as residuals of exposure to ionizing

radiation. The appellant filed an appeal to the Court.

## II. ANALYSIS

This Court reviews BVA factfinding under a "clearly erroneous" standard of review. Under this standard "if there is a 'plausible' basis in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990).

■ Service connection for cancer that is claimed to be attributable to radiation exposure during service can be demonstrated by three different methods. First, there are 15 types of cancer that are presumptively service connected. 38 U.S.C. § 1112(c); *see also* 38 C.F.R. § 3.309(d) (1996). Second, 38 C.F.R. § 3.311(b) (1996) provides a list of "radiogenic diseases" that will be service connected provided that certain conditions specified in that regulation are met. Third, direct service connection can be established by "show[ing] that the disease or malady was incurred during or aggravated by service," a task that "includes the difficult burden of tracing causation to a condition or event during service." *Combee v. Brown*, 34 F.3d 1039, 1043 (Fed.Cir.1994); *Ramey v. Brown*, 9 Vet.App. 40, 44 (1996). The Court will not address the first method by which service connection can be accomplished except to note that neither colon cancer nor skin cancer is included in the fifteen types of cancer that are subject to presumptive service connection under 38 U.S.C. § 1112(c). *See* 38 U.S.C. § 1112(c)(2)(A)-(O).

As to the second method, for purposes of 38 C.F.R. § 3.311(b), skin cancer and colon cancer are considered radiogenic diseases. *See* 38 C.F.R. § 3.311(b)(2)(vii), (x). Under this regulation, when it is determined that:

(i) [a] veteran was exposed to ionizing radiation as a result of participation in ... the occupation of Hiroshima or Nagasaki, Japan, from September 1945 until July 1946 ...;

(ii) [t]he veteran subsequently developed a radiogenic disease; and

(iii) [s]uch disease first became manifest within the period specified in paragraph

(b)(5) of this section [for colon and skin cancer, "5 years or more after exposure"]; the claim will be referred to the Under Secretary for Benefits for consideration, 38 C.F.R. § 3.311(b)(1), (c), of certain factors, § 3.311(e), including the dose data received, (e)(1), pursuant to a request made to DOD, § 3.311(a)(2)(ii). Paragraph (c)(1) provides that the Under Secretary for Benefits "may request an advisory medical opinion from the Under Secretary for Health." 38 C.F.R. § 3.311(c)(1). Paragraph (c)(1)(ii) provides that if the Under Secretary for Benefits "determines [that] there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, the Under Secretary ... shall so inform the [RO] in writing, setting forth the rationale for this conclusion." 38 C.F.R. § 3.311(c)(1)(ii); *see also Ramey,* 9 Vet.App. at 45 (holding that 38 C.F.R. § 3.311(b) does not establish a presumption of service connection for radiogenic diseases).

■ Here, the RO obtained the dose data from the DNA and referred the claim to the Director of the Compensation and Pension Service, who in turn requested a radiation review from the Chief Medical Director. Dr. Mather, Assistant Chief Medical Director, opined that "[s]kin cancer has been attributed to ionizing radiation only at high doses, usually at several hundred rads" and that "exposure to 20.2 rad[s] or less at age 22 provides 99 percent credibility that there is no reasonable possibility that it is as likely as not that the veteran's colon cancer is related to his exposure to ionizing radiation." R. at 261. Moreover, the opinion stated that since "[t]he veteran's dose was much lower than the cited value[,][ ] it is highly unlikely that his diseases can be attributed to exposure to ionizing radiation in service." *Ibid.* Based on this opinion, the Director of the Compensation and Pension Service opined that "there is no reasonable possibility that the veteran's disabilities were the result of such exposure." R. at 263. The Court finds that the Director of the Compensation and Pension Service's opinion based on the Assistant Chief Medical Director's opinion provides a plausible basis for the Board's denial of service connection under 38 C.F.R. § 3.311(b) for skin cancer and colon cancer.

■ As stated above, direct service connection can also be established for cancer that is claimed to be attributable to radiation exposure during service. *See Combee, supra; Ramey,* 9 Vet.App. at 44. The appellant has the burden of submitting evidence sufficient to justify a belief that his claims for service connection for colon cancer and skin cancer are well grounded. 38 U.S.C. § 5107(a); *see Robinette v. Brown,* 8 Vet. App. 69, 73 (1995). A claim is well grounded if it is "plausible." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Where the determinative issue involves medical etiology or a medical diagnosis, competent medical evidence that a claim is "plausible" or "possible" is required for the claim to be well grounded. *See Heuer v. Brown,* 7 Vet.App. 379, 384 (1995); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). This burden may not be met merely by presenting lay testimony because lay persons are not competent to offer medical opinions. *See Grottveit, supra; Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). Service connection generally requires medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Heuer* and *Grottveit,* both *supra.* The determination of whether a claim is well grounded is subject to de novo review by this Court. *See Robinette,* 8 Vet. App. at 74.

Here, the only evidence of record linking the appellant's colon and skin cancer to the claimed in-service radiation exposure is the appellant's own contentions. The appellant, however, as a lay person, cannot offer a medical opinion. *See Grottveit, supra.* Accordingly, in the absence of competent medical evidence linking the appellant's disabilities to the claimed in-service radiation exposure, the Court holds that the claim is not well grounded and will affirm the BVA decision as to this claim. *See Caluza, su-*

*pra; Robinette,* 8 Vet.App. at 73; *Grottveit, supra.*

■ The appellant contends that the "reconstructed dosage levels and threshold dosage requirements serve to bar all members of the occupation forces from service connection for colon cancer and skin cancer" and that "[n]either figure is the result of an individual adjudication but are stock figures routinely supplied for each claimant." Appellant's Brief (Br.) at 6. He asserts that since neither the "reconstructed" dosage levels nor the threshold dosage requirements were promulgated through notice-and-comment rule making, to the extent that 38 C.F.R. § 3.311 relies upon this information, the regulation should be considered void, and service connection should be awarded under the benefit-of-the-doubt doctrine. *Ibid.*

To the extent that the appellant may be attacking the validity of the *promulgation* of 38 C.F.R. § 3.311, the appellant does not point to nor is the Court aware of any deficiency in the regulation's promulgation. VA promulgated 38 C.F.R. § 3.311b (now 38 C.F.R. § 3.311) in 1985 pursuant to the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984) [hereinafter 1984 Act] and 38 U.S.C. § 354(a)(2) (now 38 U.S.C. § 1154(a)(2)), and after providing notice in the Federal Register and an opportunity for public comment.

The appellant is primarily attacking the validity of the regulation because of its reliance on levels of dose data that are "insufficient to justify a finding in favor of *any* veteran claiming service[ ]connected status for colon cancer or skin cancer." Br. at 15. The appellant argues that such "an adjudication by the Secretary, is in fact an exercise in rule making." *Ibid.*

The starting point as to the appellant's averment is 38 C.F.R. § 3.311(a)(2)(ii), which requires the Secretary to "request" dose data from the DOD. This regulation cites, inter alia, the 1984 Act for its authority. Section 7(a) of the 1984 Act provides that the Director of the DNA (Director), as DOD Executive Agent for the Nuclear Test Personnel Review Program, will "prepar[e] radiation dose estimates with regard to claims for [VA]

disability compensation and dependency and indemnity compensation" in accordance with rules promulgated by the Secretary of Defense (Sec.Def.) pursuant to section 553 of title 5, U.S.Code. Section 7(a) mandates that such rules specify minimum uniform standards governing preparation of radiation dose estimates, and "that each such estimate furnished to [VA] ... include information regarding all material aspects of the radiation environment...." 1984 Act, § 7(a)(1)(C). Based on this construct, the Court concludes that 38 C.F.R. § 3.311 is valid with respect to its generic mandate for VA to *request* dose data from the DOD. Even if one were to argue that it would be more appropriate to request dose data from the Sec. Def. or the Director, it must be kept in mind that the DOD is under the control of the Sec. Def. who in turn controls the actions of the Director. *See Winn v. Brown,* 8 Vet. App. 510, 515 (1996) ("The Court will sustain a regulation that is consistent with the language of the statute and is a plausible or reasonable interpretation of the law") (citing *Chevron U.S.A., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)); 10 U.S.C. § 133(a) ("Secretary of Defense ... is the head of the Department of Defense"); *see generally* 2A C.J.S. *Agency* § 6 (1973) (one essential element of agency is that principal retains right to control conduct of agent or has some voice at least with respect to matters entrusted to agent). Finally, the Court notes that section 3.311 has been previously inferentially sustained by the Federal Circuit. *See Combee, supra; see also Ramey, supra.*

### III. CONCLUSION

Upon consideration of the above, the July 31, 1995, BVA decision is AFFIRMED.

### SEPARATE VIEWS

The author judge notes that section 218 of title 32, Code of Federal Regulations (regulation) was promulgated by DOD pursuant to section 7 of the 1984 Act, and that the dose data used here were furnished to the Secretary of Veterans Affairs under this

regulation. Although its substance and implementation may be the real basis for the appellant's concern, he has not raised such issues and, therefore, they are not ripe for review. 38 U.S.C. §§ 7252(a), 7266(a); *see Morgan v. Brown*, 9 Vet.App. 161, 162 (1996). *But see Moyer v. Derwinski*, 2 Vet. App. 289, 292–93 (1992) (sua sponte reviewing issue that was not adequately briefed by veteran). Thus, it would be premature to address the Court's jurisdiction to review the promulgation, substance, or implementation of the regulation, *see* 38 U.S.C. § 7252 (stating that Court has exclusive jurisdiction to review decisions of BVA), or to address what result would obtain if the Court had such jurisdiction.