﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 191118-44570
DATE: February 27, 2020

ORDER

Entitlement to service connection for follicular lymphoma is denied. 

FINDINGS OF FACT

1. The Veteran was not exposed to ionizing radiation during service.

2. The Veteran’s follicular lymphoma did not have onset in service and is not related to such service.

CONCLUSION OF LAW

The criteria for entitlement to service connection for follicular lymphoma have not all been met. 38 U.S.C. §§ 1110, 1112, 1154, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.311.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran had active duty service in the Army from May 1964 to October 1964, with additional service in the Army Reserve. During his service, the Veteran was on active duty for training (ACDUTRA) status. A Department of Veterans Affairs (VA) Regional Office (RO), in a July 2016 decision denied service connection for follicular lymphoma. The Veteran submitted a notice of disagreement in July 2017. A statement of the case was issued in September 2019, and the Veteran perfected his appeal and selected the Evidence Submission Review Lane when he submitted the VA Form 10182 in November 2019. 

This appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2).

Entitlement to service connection for follicular lymphoma is denied.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). “To establish a right to compensation for a present disability, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service” the so-called “nexus” requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Additionally, certain chronic diseases may be presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from service, even though there is no evidence of such disease during service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a).

Moreover, service connection for conditions claimed to be due to exposure to ionizing radiation in service can be established in any of three different ways. See Davis v. Brown, 10 Vet. App. 209, 211 (1997); Rucker v. Brown, 10 Vet. App. 67, 71 (1997). First, there are diseases that are presumptively service-connected in radiation-exposed veterans under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d). 

Second, service connection can be established under 38 C.F.R. § 3.303(d) with the assistance of the procedural advantages prescribed in 38 C.F.R. § 3.311, if the condition at issue is a radiogenic disease. Third, direct service connection can be established under 38 C.F.R. § 3.303(d) by showing that the disease was incurred during or aggravated by service without regard to presumptions. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994). Under Combee, VA must not only determine whether a veteran had a disability recognized by VA as being etiologically related to exposure to ionizing radiation, but must also determine whether the disability was otherwise the result of active service. In other words, the fact that the requirements of a presumptive regulation are not met does not in and of itself preclude a claimant from establishing service connection by way of proof of actual direct causation.

A “radiation-exposed veteran” is defined by 38 C.F.R. § 3.309(d)(3) as a veteran who while serving on active duty or on active duty for training or inactive duty training, participated in a radiation-risk activity. “Radiation-risk activity” is defined to mean onsite participation in a test involving the atmospheric detonation of a nuclear device; the occupation of Hiroshima, Japan or Nagasaki, Japan by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946; or internment as a prisoner of war (or service on active duty in Japan immediately following such internment) during World War II which resulted in an opportunity for exposure to ionizing radiation comparable to that of the United States occupational forces in Hiroshima or Nagasaki during the period from August 6, 1945 through July 1, 1946. 38 C.F.R. § 3.309(b)(i), (ii). 

Onsite participation with respect to the Eniwetok Atoll is noted as being from June 21, 1951 through July 1, 1952, from August 7, 1956 through August 7, 1957, and from November 1, 1958 through April 30, 1959. See 38 C.F.R. § 3.309(d)(3)(iv)(C). 

Diseases presumptively service-connected for radiation-exposed veterans under the provisions of 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d)(2) are: leukemia (other than chronic lymphocytic leukemia), cancer of the thyroid, cancer of the breast, cancer of the pharynx, cancer of the esophagus, cancer of the stomach, cancer of the small intestine, cancer of the pancreas, multiple myeloma, lymphomas (except Hodgkin's disease), cancer of the bile ducts, cancer of the gall bladder, primary liver cancer (except if cirrhosis or hepatitis B is indicated), cancer of the salivary glands, cancer of the urinary tract; bronchiolo-alveolar carcinoma. 

If a claimant does not qualify as a “radiation-exposed veteran” under 38 C.F.R. § 3.309(d)(3) and/or does not suffer from one of the presumptive conditions listed in 38 C.F.R. § 3.309(d)(2), the veteran may still benefit from the special development procedures provided in 38 C.F.R. § 3.311 if the veteran suffers from a radiogenic disease and claims exposure to ionizing radiation in service. 

Under 38 C.F.R. § 3.311, “radiogenic disease” means a disease that may be induced by ionizing radiation and shall include the following: (i) All forms of leukemia except chronic lymphatic (lymphocytic) leukemia; (ii) Thyroid cancer; (iii) Breast cancer; (iv) Lung cancer; (v) Bone cancer; (vi) Liver cancer; (vii) Skin cancer; (viii) Esophageal cancer; (ix) Stomach cancer; (x) Colon cancer; (xi) Pancreatic cancer; (xii) Kidney cancer; (xiii) Urinary bladder cancer; (xiv) Salivary gland cancer; (xv) Multiple myeloma; (xvi) Posterior subcapsular cataracts; (xvii) Non-malignant thyroid nodular disease; (xviii) Ovarian cancer; (xix) Parathyroid adenoma; (xx) Tumors of the brain and central nervous system; (xxi) Cancer of the rectum; (xxii) Lymphomas other than Hodgkin’s disease; (xxiii) Prostate cancer; and (xxiv) Any other cancer. 38 C.F.R. § 3.311(b)(2). 

Under the special development procedures in § 3.311(a), dose data will be requested from the Department of Defense in claims based upon participation in atmospheric nuclear testing, and claims based upon participation in the American occupation of Hiroshima or Nagasaki, Japan, prior to July 1, 1946. 38 C.F.R. § 3.311(a)(2). 

In all other claims, 38 C.F.R. § 3.311(a) requires that a request be made for any available records concerning the veteran’s exposure to radiation. These records normally include but may not be limited to a veteran’s Record of Occupational Exposure to Ionizing Radiation (DD Form 1141), if maintained, service medical records, and other records which may contain information pertaining to the veteran’s radiation dose in service. All such records will be forwarded to the Under Secretary for Health, who will be responsible for preparation of a dose estimate, to the extent feasible, based on available methodologies. 38 C.F.R. § 3.311(a)(2)(iii).

Following such request and development, the claims file is to be forwarded to the Undersecretary for Benefits (Director of Compensation Service) for review of the claim; the Undersecretary for Benefits may seek an advisory opinion from the Undersecretary for Health in conjunction with that review of the claim. See 38 C.F.R. § 3.311(c), (e). 

Service connection may be granted for disability resulting from disease or injury incurred or aggravated while performing active duty for training (ACDUTRA), or from injury incurred or aggravated while performing inactive duty for training (INACDUTRA/IDT). 38 U.S.C. §§ 101(24), 106, 1131.

ACDUTRA is, among other things, full-time duty in the Armed Forces performed by Reserves for training purposes or by members of the National Guard. 38 U.S.C. § 101 (22); 38 C.F.R. § 3.6(c)(1). INACDUTRA/IDT is part-time duty in the Armed Forces performed by Reserves for training purposes or by members of the National Guard. Id. Active service also includes authorized travel to or from such duty or service. 38 U.S.C. § 106(d); 38 C.F.R. § 3.6(e).

When a claim for service connection is based only on a period of ACDUTRA or INACDUTRA, there must be evidence that the appellant became disabled as a result of a disease or injury incurred or aggravated in the line of duty during that period of ACDUTRA or INACDUTRA. See 38 U.S.C. §§ 101 (2), (22), (24); 38 C.F.R. § 3.6(a); Donnellan v. Shinseki, 24 Vet. App. 167, 172 (2010); Acciola v. Peake, 22 Vet. App. 320, 324 (2008) (citing Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998); Paulson v. Brown, 7 Vet. App. 466, 470 (1995)). In the absence of such evidence, the period of ACDUTRA or INACDUTRA would not qualify as “active military, naval, or air service,” and the appellant would not qualify as a “veteran” for that period of ACDUTRA or INACDUTRA service alone. 38 U.S.C. § 101 (2), (24); See Acciola, 22 Vet. App. at 32.

The Veteran contends that he is entitled to service connection for follicular lymphoma. Specifically, the Veteran asserts that his follicular lymphoma is due to his exposure to ionizing radiation, for more than 5 years, in and around x-ray machines while he was in service. See December 2015 Personal Statement.

The Veteran’s DD 214 reflects that his military occupational specialty was that of a medical equipment repairman. 

In this case, the Veteran’s service treatment records (STRs) do not document any treatment for or diagnosis of follicular lymphoma during military service. The evidence of record documents that his initial diagnosis and treatment for follicular lymphoma was in 2013, many years after military service. 

In the December 2015 buddy statement, the Veteran’s fellow serviceman stated that he served with the Veteran as a medical equipment repairman. The fellow serviceman further stated that they worked together for 5 years to maintain and repair hospital, x-ray, dental, and fluoroscopic equipment. He also stated that they were required to wear dosimeters. However, he stated that dosimeters were not issued during the period that he worked with the Veteran and that consequently they had potential high levels of radiation exposure.

In the January 2016 private physician letter, the Veteran’s physician noted that he has been the primary medical oncologist for the Veteran since June 2013. The physician has further noted that since then, he has become familiar with the Veteran’s active duty medical history. The physician also noted that during the Veteran’s military service, he served as a medical and dental repair technician. The physician noted that the Veteran was required to wear a dosimeter but that he had never been told of his radiation dose exposure. The physician further noted that during the Veteran’s service, he was frequently exposed to ionizing radiation without shielding. The physician noted that the Veteran was exposed to ionizing radiation from equipment and from being in the room where diagnostic radiology was performed. The physician further noted that the Veteran’s total dose exposure was not available to him during the time he drafted this physician letter.

The physician noted that during his initial consultation in June 2013, he confirmed the Veteran’s diagnosis of follicular lymphoma. The physician further noted that after examining the Veteran, caring for him, and reviewing his medical records and his service history, it is his opinion that the Veteran’s follicular lymphoma is more likely than not due to his ionizing radiation exposure during the Veteran’s active military service. The physician further concluded that the Veteran has no other known history that would cause or contribute to this condition.

The May 2016 Army Dosimetry Center response reveals that the Veteran was not exposed to ionizing radiation during service. The doses reported during service were 0.00. Additionally, a review of service records fails to show exposure to ionizing radiation during service.

Based on the foregoing, the Board concludes that the Veteran has met the first element of service connection in this case, as he has a current diagnosis of follicular lymphoma. However, the in-service element and the nexus element are not met in this case. Regarding the in-service element, the STRs and the Army Dosimetry Center response are the most probative evidence of record. 

The Board acknowledges the Veteran’s lay statements regarding his exposure to ionizing radiation while in service. Although the Veteran and his fellow service man are competent to state that he worked in and around x-ray equipment, they are not competent to render a medical opinion in this case regarding the complex medical question of whether the x-ray equipment he was exposed to during his military service caused his follicular lymphoma as they lack the requisite medical experience and expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

The Board acknowledges the January 2016 private physician letter addressing the nexus element. However, this opinion is not probative because the physician’s opinion is not based on a review of the objective evidence showing that the Veteran was not exposed to ionizing radiation during service. 

The Board additionally notes that the Veteran’s follicular lymphoma became manifest many years after military service. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000) (a significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim, which weighs against the claim).

Next, although the Veteran has a presumptive radiogenic disease under 38 C.F.R. § 3.309(d), presumptive service connection under those provisions is not warranted in this case as the Veteran is not shown to have any onsite participation at the Eniwetok Atoll during the periods noted by the regulation, or for the six months following any of those noted periods, nor any noted service at Hiroshima or Nagasaki or as a prisoner of war during August 6, 1945 through July 1, 1946. Thus, the Veteran is not shown to have participated in a “radiation-risk activity” as defined by those presumptive regulations during his period of military service such that he is a “radiation-exposed veteran” and may be presumptively service connected on that basis in this case. 

As the Veteran has a radiogenic disease for purposes of 38 C.F.R. § 3.311 and claims exposure to ionizing radiation in service, the additional developmental provisions are applicable in this case. The available records concerning the Veteran’s exposure to radiation has been obtained. However, the Army Dosimetry Center response reveals that the Veteran was not exposed to ionizing radiation during service. As such, the claim was not referred to the Under Secretary for Health. See Wandel v. West, 11 Vet. App. 200 (1998). The Board therefore observes that the developmental provisions of 38 C.F.R. § 3.311 have been properly completed in this case.

Accordingly, as the most probative evidence of record weighs against a finding that the Veteran’s follicular lymphoma is due to exposure of ionizing radiation during military service and as his follicular lymphoma was not shown to have been incurred in service or for many years after discharge therefrom, the Board finds that service connection for follicular lymphoma in this case must be denied based on the evidence of record at this time. See 38 C.F.R. §§ 3.102, 3.303, 3.311. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claims, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

 

 

JAMES G. REINHART

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Williams, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.