Lois E. HILKERT, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–208.

United States Court of Veterans Appeals.

Argued March 16, 1998.

Decided July 16, 1998.

Gary L. Beaver for appellant.

R. Randall Campbell, Deputy Assistant General Counsel, with whom Robert E. Coy, Acting General Counsel, and Ron Garvin, Assistant General Counsel, Washington, DC, were on the pleadings, for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a dissenting opinion.

STEINBERG, Judge:

The appellant, Lois E. Hilkert, the widow of World War II veteran Frank T. Hilkert, appeals through counsel a January 19, 1996, decision of the Board of Veterans' Appeals (BVA or Board) concluding that the veteran's cause of death was not connected to his

service and therefore denying the appellant's claim for Department of Veterans Affairs dependency and indemnity compensation (DIC) under 38 U.S.C. § 1310. Record (R.) at 4–5. The appellant filed a motion for remand and to accept that motion in lieu of a brief; the Secretary filed an opposition to the first motion; and the appellant filed a reply. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the Board's decision and remand the matter.

## I. Facts

The veteran served on active duty in the U.S. Army from April 1945 to January 1948. R. at 84. Service medical records (SMRs) and the report of his medical examination at discharge are negative for any relevant conditions. *See* R. at 13–18, 20–22, 24–52. In July 1984, he was diagnosed with adenocarcinoma of the rectum with lymph node and liver metastasis. R. at 59–60. A September 1984 Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision awarded non-service-connected pension. R. at 63–64. In April 1985, the veteran died; his death certificate listed the cause of death as hepatic failure due to liver metastasis due to carcinoma of the rectum. R. at 73.

In October 1991, the appellant filed a claim for DIC benefits. R. at 76–79. A January 1991 VARO decision denied service connection for the cause of the veteran's death, noting that he was not service connected for any condition during his lifetime and that SMRs and available evidence did not connect his cause of death to service. R. at 86. The appellant then specifically sought consideration under 38 C.F.R. § 3.311, relating to claims based on exposure to ionizing radiation, noting that the veteran had served in Japan in December 1945. R. at 88. The RO then apparently sought a dose estimate from the Defense Nuclear Agency (DNA); a May 1992 DNA letter confirmed that the veteran was present for one day at Nagasaki during the American occupation of Japan—November 2, 1945, to November 3, 1945. R. at 91. Relying upon a scientific dose reconstruction prepared by the National Institute for Occu-

pational Safety and Health (NIOSH), entitled *Radiation Dose Reconstruction: U.S. Occupation Forces in Hiroshima and Nagasaki, Japan, 1945–1946* [hereinafter NIOSH report], the DNA letter stated: "Using all possible 'worst case' assumptions, the maximum possible dose any individual serviceman might have received from external radiation, inhalation, and ingestion is less than one rem." *Ibid.* In June 1992, the RO confirmed its prior decision, noting that cancer of the rectum was not then one of the radiogenic diseases listed under 38 C.F.R. § 3.311(b) (1991) (the Court notes that cancer of the rectum was added to the list of such diseases in October 1995, *see* 60 Fed. Reg. 53,276 (Oct. 13, 1995)) or listed as one of the presumptively service-connected diseases in 38 C.F.R. § 3.309(d)(2) (1991). R. at 94.

In June 1992, the appellant submitted a copy of a discharge summary from United Health Services dated in July 1984; the final diagnosis was "[t]otally obstructing adenocarcinoma of the rectosigmoid junction extending downwards in the upper third of the rectum with lymph node and liver metastasis". R. at 96–98. The RO again confirmed its prior decision (R. at 101), and in September 1992 it issued a Statement of the Case (SOC) that, inter alia, cited the report relied upon in the DNA opinion (R. at 116). The appellant filed a timely appeal to the Board. R. at 103–04, 126–27. In a letter dated in October 1992, a private physician, Dr. Patel, reported that the veteran's tumor was at the junction of the rectum and colon, "rectosigmoid colon", and that it actually involved part of the colon and the rectum. R. at 120. The RO then sought a review of the appellant's case pursuant to 38 C.F.R. § 3.311 (although cancer of the rectum was not listed in § 3.311(b) in 1992, cancer of the colon was), forwarding its request to the Director of VA's Compensation and Pension Service (C & P Director) (R. at 129–30), who in turn sought a response from VA's Under Secretary for Health (R. at 132).

Apparently in response to that request, Dr. Susan Mather, VA Assistant Chief Medical Director for Environmental Medicine and Public Health, opined that the veteran's dose was much lower than the "worst case" value

cited in the DNA report and concluded: "[I]t is highly unlikely that his disease can be attributed to exposure to ionizing radiation in service". R. at 134. Her opinion cited two reports to support its conclusion, CIRRPC Scientific Panel Report No. 6, 1988, and *Health Effects of Exposure to Low Levels of Ionizing Radiation* (BEIR V), 1990. *Ibid.* In a July 1993 letter to the RO, the C & P Director, noting that an opinion was requested from the Under Secretary for Health and apparently relying upon the opinion from Dr. Mather, concluded that there was "no reasonable possibility that the veteran's disability was the result of such [radiation] exposure". R. at 140. In August 1993, the RO, referencing the § 3.311 process, again denied service connection for the veteran's cause of death. R. at 136–38. The RO then issued in August 1993 a Supplemental SOC (SSOC) that referred to, inter alia, the two reports cited in Dr. Mather's opinion. R. at 144.

In the January 1996 BVA decision here on appeal, the Board concluded that a preponderance of the evidence was against the claim. R. at 4–5. In summarizing the facts, the Board noted the DNA opinion regarding exposure and the NIOSH report on which it relied (R. at 7) and Dr. Mather's opinion and the above-cited reports on which it relied (R. at 8). In its penultimate paragraph, the Board stated:

> The Board notes that the radiation dose reconstruction by DNA shows that the upper bound of the veteran's exposure to ionizing radiation in service was less than 1.0 rem. There is no medical opinion of record linking the adenocarcinoma of the rectosigmoid colon with metastasis to ionizing radiation exposure in service. There is, however, a medical opinion from a representative of the Under Secretary of [sic] Health, that it is not more likely than not that the veteran's adenocarcinoma of the rectosigmoid colon was related to ionizing radiation in service. Nor does the evidence of record link this disorder to another incident of service or reveal another service-connected disability which caused the veteran's death or materially contributed to his death.

R. at 9. This appeal followed, and oral argument was held on March 16, 1998.

## II. Analysis

■ When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1997). A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributing cause of death". 38 C.F.R. § 3.312 (1997). A claim for section 1310 DIC is treated as a new claim, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran (*see* 38 C.F.R. § 20.1106 (1997); *Zevalkink v. Brown,* 6 Vet.App. 483, 491 (1994), *aff'd,* 102 F.3d 1236 (Fed.Cir. 1996)); therefore, a DIC claimant must submit evidence sufficient to make the claim well grounded.

As a general matter, service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified presumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307, 3.309 (1997).

■ When a disease is first diagnosed after service but not within an applicable presumption period, service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service, or by evidence that a presumption period applied. *See Combee v. Brown,* 34 F.3d 1039, 1042 (Fed.Cir.1994) ("[p]roof of direct service connection ... entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi,* 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"); *see also* 38 C.F.R. § 3.303(d). A service-connection claim must be accompa-

nied by evidence that establishes that the claimant currently has the claimed disability. *See Brammer v. Derwinski*, 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability there can be no valid claim"); *see also Rabideau v. Derwinski*, 2 Vet.App. 141, 144 (1992). Determination of service connection is a factual matter, *see Wray v. Brown*, 7 Vet.App. 488, 492 (1995); *Wood v. Derwinski*, 1 Vet.App. 190, 192 (1991), and the Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

■ As to the well groundedness of a claim, 38 U.S.C. § 5107(a) provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, ·81 (1990). A well-grounded service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service injury or disease and a current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober*, 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied*, — U.S. —, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998); *Heuer v. Brown*, 7 Vet.App. 379, 384 (1995) (citing *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993)); *Brammer, supra*. For purposes of determining whether a claim is well grounded, the credibility of the evidence supporting the claim is presumed. *See Robinette v. Brown*, 8 Vet.App. 69, 75–76 (1995); *King v. Brown*, 5 Vet.App. 19, 21 (1993). A Board determi-

nation whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Robinette*, 8 Vet. App. at 74; *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994); *Grottveit, supra.*

■ In the instant case, the appellant claims that the veteran's adenocarcinoma of the rectosigmoid colon, which caused his death, resulted from his exposure to ionizing radiation in service. Service connection for such a condition may be established in one of three different ways: (1) By demonstrating that the condition at issue is one of the 15 types of cancer that are presumptively service connected under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309 (1997); (2) by demonstrating direct service connection under 38 C.F.R. § 3.303(d) (1997), a task that "includes the difficult burden of tracing causation to a condition or event during service", *Combee*, 34 F.3d at 1043; or (3) by demonstrating direct service connection under § 3.303(d) **with the assistance of the procedural advantages prescribed in 38 C.F.R. § 3.311** (1997), if the condition at issue is one of the "radiogenic diseases" listed by the Secretary in § 3.311(b). *See Ramey v. Brown*, 9 Vet.App. 40, 44 (1996), *aff'd sub nom. Ramey v. Gober*, 120 F.3d 1239 (Fed.Cir.1997). This third route is, then, actually just another way of showing direct service connection but with certain added assistance by the Secretary in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.311(f) (requiring that service-connection determination after § 3.311 claim development be made under "generally applicable" VA adjudication provisions set forth in part 3 of title 38, Code of Federal Regulations). The appellant here seeks to have the veteran's colon cancer service connected via the third route, seeking the claims-development procedural advantages provided by 38 C.F.R. § 3.311.

In her motion for remand, the appellant abjures argument on the merits and raises the five following alleged defects in VA's procedures and the application of § 3.311 to her case: (1) That VA violated its 38 U.S.C. § 5107(a) duty to assist; (2) that VA failed to provide her with a reasonable opportunity to respond to scientific studies relied upon by

the BVA in denying her claim; (3) that review by the Under Secretary for Benefits of the claim in accordance with 38 C.F.R. § 3.311(b) was not satisfied; (4) that the DNA report and Dr. Mather's opinion are inherently incredible because VA has not established Dr. Mather's qualifications for rendering an opinion in a radiogenic disease case; and (5) that VA has undermined the regulatory scheme by "automatically denying all § 3.311(b) radiogenic disease claims by veterans who served in post-war Japan" (Reply Brief (Br.) at 11).

## A. Interpretation of § 3.311 and Well Groundedness of Claim

The § 3.311 regulations were prescribed in 1985 (initially designated § 3.311b) pursuant to the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984), through a public rulemaking process. *See* 50 Fed. Reg. 15,848 (Apr. 22, 1985) (proposed regulations); 50 Fed.Reg. 34,452 (Aug. 26, 1985) (final regulations). Under section 5(a)(1) of Public Law 98–542, the Secretary of Veterans Affairs is required to prescribe regulations establishing criteria "for the resolution of claims for benefits under laws administered by [VA] where ... the claim of service connection is based on a veteran's exposure during service ... to ionizing radiation from the detonation of a nuclear device". Pub.L. No. 98–542, § 5(a)(1), 98 Stat. at 2727. Regulation section 3.311(a)(1) provides:

> In all claims in which it is established that a radiogenic disease first became manifest after service and was not manifest to a compensable degree within any applicable presumpti[on] period as specified in § 3.307 or § 3.309, and it is contended the disease is a result of exposure to ionizing radiation in service, an assessment will be made as to the size and nature of the radiation dose or doses.

38 C.F.R. § 3.311(a)(1). For a claimant to fall initially within the purview of § 3.311 for purposes of receiving assistance under it, he or she must satisfy four criteria: (1) The presence of a radiogenic disease must be "established"; (2) the person to whom the regulation is to apply must have had "service"; (3) the radiogenic disease must not

have been one covered as presumptively service connected under §§ 3.307 and 3.309 (otherwise the claimant would be entitled to presumptive service connection) and must have been manifested within the applicable presumption period under § 3.311(b)(5); and (4) the claimant must "contend" that the radiogenic disease was the result of exposure to ionizing radiation in service. *See* 50 Fed. Reg. at 15,851 ("if these minimum criteria are met, further consideration of the claim under proposed § 3.311b will be accorded").

When these four § 3.311(a)(1) criteria are satisfied, as they were in the instant case, VA has the obligation under Public Law 98–542 and the regulation to make an "assessment" of the radiation-exposure dose experienced by the veteran in service and then, dependent upon the result of that assessment, a further obligation to fulfill other developmental, procedural steps. The regulation does not make clear what that "assessment" contemplates except to state that "[w]here necessary" a dose estimate will be sought from the Department of Defense or the VA Under Secretary for Benefits. 38 C.F.R. § 3.311(a)(2). However, the regulation does make clear that when it "is determined" (presumably as a result of the seeking of a dose estimate or other records) that the veteran "was exposed to ionizing radiation" and subsequently developed a radiogenic disease not subject to a presumption of service connection under §§ 3.307 and 3.309 and within the presumption period under § 3.311(b)(5), it is required that "before its adjudication the claim will be referred to the Under Secretary for Benefits for further consideration". 38 C.F.R. § 3.311(b)(1); *see Wandel v. West,* 11 Vet.App. 200, 204–205 (1998). The regulation thus provides, at a minimum, a three-step process: (1) Claimant satisfies the four criteria of § 3.311(a) outlined above; (2) VA then seeks a dose estimate; (3) if the dose estimate shows exposure to ionizing radiation in service, VA then refers the matter to the Under Secretary for Benefits for consideration.

Once the matter is referred to the Under Secretary for Benefits, the regulation provides that the Under Secretary "*shall* consider the claim with reference to *the factors*

specified in paragraph (e) of this section and *may* request an advisory opinion from the Under Secretary for Health". 38 C.F.R. § 3.311(c)(1) (emphasis added). The regulation then sets forth three permutations for the response by the Under Secretary for Benefits: (1) If he or she finds that "sound scientific and medical evidence supports the conclusion [that] it is at least as likely as not [that] the veteran's disease resulted from exposure to radiation in service", the Under Secretary so informs the RO and "set[s] forth the rationale for this conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e)" (38 C.F.R. § 3.311(c)(1)(i)); (2) if the Under Secretary finds that "there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, [he or she] shall so inform the [RO] ... setting forth the rationale for this conclusion" (38 C.F.R. § 3.311(c)(1)(ii)); and (3) if the Under Secretary is "unable" to make either of the foregoing conclusions, he or she *"shall* refer the matter to an outside consultant in accordance with paragraph (d)" (38 C.F.R. § 3.311(c)(2) (emphasis added)), and the consultant's report—which must also consider the factors specified in paragraph § 3.311(e)—is then transmitted to the RO by the Under Secretary "with any comments" by the Under Secretary (38 C.F.R. § 3.311(d)(3)). Subsequently, the RO adjudicates the claim under VA's "generally applicable" adjudication provisions (38 C.F.R. § 3.311(f)); *see also* 38 C.F.R. § 3.303(d).

A § 3.311 claim is thus a unique sort of service-connection claim as to which VA must supply special claims-development assistance upon a showing that a claimant falls under that section's provisions, even where that claim might not otherwise satisfy the criteria for a well-grounded claim outlined in *Caluza, supra. See* Pub.L. No. 98–542, § 2(12), 98 Stat. at 2726 ("[s]uch claims [related to exposure to ionizing radiation and dioxin] ... present adjudicatory issues which are significantly different from issues generally presented in claims based upon the usual types of injuries incurred in military service"). The Board, without further comment, concluded that the appellant's claim was well grounded (R. at 8); however, the well

groundedness of a claim is an issue that the Court determines de novo, *see Robinette, Grivois,* and *Grottveit,* all *supra.* This Court may have suggested in *Combee v. Principi* that a person who submits a claim that falls within the four corners of § 3.311 has presented a claim that is well grounded under section 5107(a), *Combee,* 4 Vet.App. 78, 85–86 (1993) (under § 3.311 "a veteran must meet certain threshold requirements in order to establish a well-grounded claim for service connection based on exposure to ionizing radiation"), *reversed* 34 F.3d 1039 (Fed.Cir. 1994); *see also* 38 U.S.C. § 5107(a) ("[e]xcept as otherwise provided by the Secretary in accordance with the provisions" of title 38, Secretary shall assist claimant who has submitted well-grounded claim in developing claim). Nevertheless, any such conclusion would seem at odds with the Court's recent opinion in *Wandel, supra.* In *Wandel,* the Court held that where the DNA § 3.311 dose estimate is that the veteran was exposed to no ionizing radiation, "further development" under § 3.311 is not required. *Wandel, supra.* Moreover, the Court went on there to assess whether the appellant's claim for direct service connection was well grounded without regard to the § 3.311 process and found that it was not because there was "no evidence to provide the requisite medical nexus between the veteran's death and his military service", *id.,* at 205, a conclusion applicable in the instant case as well. However, *Wandel* leaves open a question whether a claim that meets the four § 3.311 threshold requirements and as to which the DNA dose estimate is positive (that is, more than a zero-exposure estimate), as it was here, is thereby a well-grounded claim for direct service connection. Nonetheless, as our decision in part II.B., below, will show, even if we were to conclude that the appellant in the instant case had submitted a well-grounded section 1310 DIC direct-service-connection claim by virtue of having met the four § 3.311(a)(1) criteria and received a positive DNA dose estimate, no duty to assist was violated in this case.

### B. Duty to Assist

Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-

grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1997); *Epps*, 126 F.3d at 1469; *Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990). The duty to assist may, in an appropriate case, include the duty to seek to obtain pertinent private medical records. *See Masors v. Derwinski*, 2 Vet.App. 181, 186–87 (1992); *Littke, supra.* Where the record does not adequately reveal the current state of the claimant's disability and the claim is well grounded, the fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination. *See Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993); *Green ·(Victor) v. Derwinski*, 1 Vet. App. 121, 124 (1991). "If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1997); *see also* 38 C.F.R. § 19.9 (1997) (when further evidence or clarification "is essential for a proper appellate decision . . . Board shall remand the case"). As the U.S. Court of Appeals for the Federal Circuit recently held, "under § 5107(a), the [ ]VA has a duty to assist only those claimants who have established 'well[-]grounded' (*i.e.*, plausible) claims". *Epps, supra.*

▮ The appellant contends that VA violated its 38 U.S.C. § 5107(a) duty to assist her because it relied upon the DNA dose estimate and Dr. Mather's opinion without providing the appellant assistance "with gathering information helpful to her claim" from its library of information on radiogenic cancer. Br. at 12. The Court has never held that a section 5107(a) duty to assist would require VA to advise a claimant of the existence of medical treatises within its possession that might offer contrary evidence to that already in the claims file, and it declines to so hold today: The duty to assist does not generally require VA sua sponte to seek evidence to deconstruct otherwise facially credible evidence before it. *See Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) (duty to assist is "a duty to *assist,* not a duty to prove a claim with the claimant only in a passive role. . . . [It is] not a license for a

'fishing expedition' to determine if there *might* be some *unspecified* information which could possibly support a claim"); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) (appellant "entitled to response from VA as to whether he has made **a sufficient showing of the relevance**" of records sought but not necessarily to the records sought because "[t]he duty to assist is not unlimited"); *Wood*, 1 Vet.App. at 193 ("duty to assist is not always a one-way street").

▮ In the instant matter, the appellant never **sought** additional records in even so general a manner as to inquire whether VA had any contrary evidence, much less did she specify records or a category of records that she sought. The appellant appears to rely upon language in this Court's opinion in *Thurber v. Brown*, which states:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [SOC] or [SSOC] with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it and a reasonable opportunity for the claimant to respond to it. If, **in the course of developing or obtaining or attempting to so develop or obtain such evidence, the BVA becomes aware of any evidence favorable to the claimant, it shall provide the claimant with reasonable notice of and a reasonable opportunity to respond to the favorable evidence,** and shall in its decision provide reasons or bases for its findings with respect to that evidence.

*Thurber*, 5 Vet.App. 119, 126 (1993) (emphasis added). As is plain from the context of the emphasized *Thurber* language, the Board's obligation to advise the appellant of "favorable" evidence arises in the context of its development or attempt to develop **a particular claim.** It does not extend to a universe of information that is not part of the "record of proceedings before the Secretary and the Board" as to that claim, *see* 38 U.S.C. § 7252(b); *Bell v. Derwinski*, 2 Vet. App. 611, 612–13 (1992) (per curiam order).

■ Thus, because the appellant never sought contrary medical treatises from the Board and because there is no indication in the record on appeal (ROA) that such information was ever before the Board in the course of its development of the appellant's claim, VA incurred no duty to assist her in seeking out such unspecified information of which it may or may not have been aware. *See Bowey v. West*, 11 Vet.App. 106, 108–09 (1998) (per curiam order) (radiation-exposure treatises "merely referenced in expert opinion letters" were not actually or constructively before VA, and thus could not be made part of ROA because they were not part of record before Secretary or Board); *see also id.* at 109 (Steinberg, J., concurring in part and dissenting in part) (agreeing on this point with majority). *But see id.* at 110–11 (arguing that NIOSH report relied upon by DNA should reasonably be expected to be "a part of the administrative record in each such case involving a DNA dose estimate based on presence at Hiroshima or Nagasaki"). The Court thus concludes that, even assuming that the appellant's claim were well grounded under section 5107(a), there was no violation of any section 5107(a) duty to assist in the instant case in terms of VA's having been obliged to volunteer to obtain unspecified materials that the claimant did not request assistance in obtaining and of which VA was not specifically aware in developing *her* claim.

### C. Review by the Under Secretary for Benefits and Board's Reasons-or-Bases Requirement

As we concluded in part II.A., above, when VA determines pursuant to 38 C.F.R. § 3.311(b)—as it did in this case by virtue of the DNA report and the evidence submitted by the appellant—that a veteran was exposed to ionizing radiation and had developed a radiogenic disease (as listed under § 3.311(b)(2)), and that the radiogenic disease was first manifest in the period specified under § 3.311(b)(5) (in this case, "5 years or more after exposure"), then "before its adjudication the claim will be referred to the Under Secretary for Benefits for further consideration in accordance with paragraph (c) of this section". 38 C.F.R. § 3.311(b)(1);

*see Wandel, supra.* The regulation then goes on to provide in paragraphs (c) and (e) as follows:

(c). . . .

(1) When a claim is forwarded for review pursuant to paragraph (b)(1) of this section, the Under Secretary for Benefits shall consider the claim *with reference to the factors specified in paragraph (e)* of this section and may request an advisory medical opinion from the Under Secretary for Health.

(i) If after such consideration the Under Secretary for Benefits is convinced sound scientific and medical evidence supports the conclusion it is at least as likely as not the veteran's disease resulted from exposure to radiation in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing. The Under Secretary for Benefits shall *set forth the rationale for this conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e) of this section.*

(ii) If the Under Secretary for Benefits determines there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing, *setting forth the rationale for this conclusion.*

. . . .

(e) *Factors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service include:*

(1) The probable dose, in terms of dose type, rate and duration as a factor in inducing the disease, taking into account any known limitations in the dosimetry devices employed in its measurement or the methodologies employed in its estimation;

(2) The relative sensitivity of the involved tissue to induction, by ionizing radiation, of the specific pathology;

(3) The veteran's gender and pertinent family history;

(4) The veteran's age at time of exposure;

(5) The time-lapse between exposure and onset of the disease; and

(6) The extent to which exposure to radiation, or other carcinogens, outside of service may have contributed to development of the disease.

38 C.F.R. § 3.311(c), (e) (emphasis added). The appellant argues that there is no evidence that the Under Secretary for Benefits ever reviewed the claim under paragraph (c) or that the factors listed under paragraph (e) were ever considered.

As to the first contention, a review of the ROA—and parsing of the provisions of § 3.311(c)—suggests that the Under Secretary for Benefits did review the claim. In accordance with § 3.311(b)(1)(iii), the RO referred the claim to the Under Secretary for Benefits (*see* R. at 129–30 (letter from RO to C & P Director)), and he—apparently through his agent, the C & P Director (*see* 38 C.F.R. § 3.100(a) (general authority for Under Secretary for Benefits to designate supervisory personnel of Veterans Benefits Administration to make findings under applicable law and regulation as to payment of VA compensation and pension benefits))—sought an opinion from the Under Secretary for Health (R. at 132 (letter from C & P Director)). Dr. Mather's opinion in response—noting "[a]s you requested, [the Veterans Health Administration] has reviewed the file of Frank T. Hilkert"—replied directly to the C & P Director (*see* R. at 136), and the C & P Director then returned an opinion to the RO that relied upon Dr. Mather's opinion (R. at 140) apparently given on behalf of the Under Secretary for Health (*but see* 38 C.F.R. § 2.6(a) (1997) (specifying authority for Under Secretary for Health to delegate certain authority)). Thus, it appears that the claim was forwarded to the Under Secretary for Benefits in accordance with § 3.311(b) and that the Under Secretary for Benefits— apparently through his agent—reviewed the claim and returned a response to the RO. The appellant has not challenged before the Board the appropriateness of any delegation under § 3.311 and expressly declined to do so at the oral argument on this case before the Court. Consequently, the Court will not address any such issue for the first time on

appeal. *See Morgan v. Brown*, 9 Vet.App. 161, 162 (1996) (per curiam order); *Davis v. Brown*, 10 Vet.App. 209, 213–14 (1997) (Kramer, J., separate views).

The appellant's contention that the Under Secretary for Benefits' review did not address all of the factors specified in § 3.311(e) presents a more significant issue. As pointed out in part II.A., above, section 5(b)(2)(A)(iii) of Public Law 98–542 requires that the Secretary's "regulations ... establish guidelines and (where appropriate) standards and criteria for the resolution of claims for benefits ... based upon a veteran's exposure [to ionizing radiation] during service", Pub.L. No. 98–542, § 5(a), 98 Stat. at 2727, and "shall include *provisions specifying the factors to be considered in adjudicating issues relating to* whether or not *service connection* should be granted in individual cases and the circumstances governing the granting of service connection for such disease", *id.* § 5(b)(2)(A)(iii), 98 Stat. at 2728 (emphasis added). In compliance specifically with this statutory section 5(b)(2)(A)(iii) requirement, the regulations provide in § 3.311(e), as we have seen, that the "[f]actors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service" include the six specified factors quoted above and require in paragraph (c)(1) that "[w]hen a claim is forwarded [to the Under Secretary for Benefits] pursuant to paragraph (b)(1) of this section, the Under Secretary for Benefits *shall consider the claim with reference to the factors specified in paragraph (e)* ", 38 C.F.R. § 3.311(c)(1) (emphasis added). Thus, the public law requires that the VA adjudicator (the RO or the BVA) consider "the factors" specified in the regulations (in § 3.311(e)), and the regulations establish a process to assist the adjudicator in deciding ionizing-radiation-exposure claims.

 Under 38 U.S.C. § 7104(d)(1), a Board decision must include a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate re-

view in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992); *Masors,* 2 Vet.App. at 188; *Gilbert,* 1 Vet.App. at 56–57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza,* 7 Vet.App. at 506; *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.* Under 38 U.S.C. § 5104(b)(1), the Secretary has comparable responsibility to specify, in the notice of a decision of the agency of original jurisdiction (generally an RO) that is required "in any case where the Secretary denies a benefit sought", a "statement of the reasons for the decision". 38 U.S.C. § 5104(a), (b)(1). *See generally Crippen v. Brown,* 9 Vet.App. 412, 420 (1996) (outlining history of 1989 enactment of section 5104(b), effective in February 1990).

▮▮▮ It is thus axiomatic that section 7104(d)(1) requires the Board to discuss specifically the application of factors that VA is required by law and regulation to consider in adjudication of a claim. Accordingly, in a § 3.311 claim, the Board is required by section 7104(d)(1) to discuss the applicability of the paragraph (e) factors that the law specifies are "to be considered in adjudicating" § 3.311 claims. *See* Pub.L. No. 98–542, § 5(b)(2)(A)(iii), 98 Stat. at 2728; 38 U.S.C. § 7104(d)(1); *see also* 38 C.F.R. §§ 3.311(e), (f). Because the law requires VA to consider "the factors" specified in the regulations that VA prescribes and the regulations specify those factors in paragraph (e), the Court concludes that all of the paragraph (e) factors must be considered by the adjudicator in every § 3.311 case. *See Ridings v. Brown,* 6 Vet.App. 544, 546 (1994) (finding reasons-or-bases error and remanding where Board failed to discuss *all* elements applicable to determination whether recovery of overpayment would be against equity and good conscience under 38 C.F.R. § 1.965(a)); *Cullen v. Brown,* 5 Vet.App. 510, 512 (1993) (BVA decision "not capable of being judicially reviewed due to its failure to provide adequate

'reasons or bases' for its determination that recovery of the overpayment [under 38 C.F.R. § 1.965(a)] of disability compensation benefits would not violate the principles of equity and good conscience").

In the instant case, the Board's decision cannot be construed under any interpretation as having addressed the following factors from paragraph (e): (1) "any known limitations in the dosimetry devices employed in its measurement or the methodologies employed in its estimation"; (2) the "relative sensitivity of the involved tissue to induction, by ionizing radiation, of the specific pathology"; (3) the "veteran's gender and pertinent family history."; (4) the "veteran's age at time of exposure"; (5) the "time-lapse between exposure and onset of the disease"; and (6) the "extent to which exposure to radiation, or other carcinogens, outside of service may have contributed to development of the disease". This failure by the BVA decision to address all of the paragraph (e) factors frustrates judicial review of the decision because the Court cannot determine whether and to what extent all the enumerated factors are or ought to be applicable in the instant case and certainly cannot assess the adequacy of the Board's statement of the reasons or bases for its decision in accordance with 38 U.S.C. § 7104(d)(1) and our caselaw thereunder. *See Wing v. West,* 11 Vet.App. 98, 101 (1998) ("Board may not apply regulations piecemeal"); *Ridings* and *Cullen,* both *supra; see also Gabrielson, Simon, Masors,* and *Gilbert,* all *supra.*

▮▮▮ Moreover, the Court notes that independent analysis by the Board as to virtually all of the § 3.311(e) factors would not comport with the Court's decision in *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). The paragraph (e) factors generally involve questions of medical judgment, and the Board may rely only upon medical evidence in reaching a decision on a medical question and may not provide its own unsubstantiated medical conclusion. *See* 38 U.S.C. § 7104(a) (Board decisions "shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"); *Colvin, supra* ("BVA panels may

consider only independent medical evidence to support their findings"); *see also Alemany v. Brown,* 9 Vet.App. 518, 519 (1996); *Rollings v. Brown,* 8 Vet.App. 8, 12 (1995) (citing *Colvin, supra*); *Thurber,* 5 Vet.App. at 120–22. Thus, because, as we have concluded, the Board was required by Public Law 98–542 and § 3.311 to "consider" all the § 3.311(e) factors in its adjudication of the claim, and because our caselaw precludes the Board from considering those factors without benefit of medical evidence of record, and because the medical evidence before the Board did not address all those factors, the Board was required to remand the claim for a medical opinion to be obtained that would be adequate for the requisite analysis of the paragraph (e) factors. *See Goss v. Brown,* 9 Vet.App. 109, 114 (1996) ("[w]here the Board makes a decision based on an examination report which does not contain sufficient detail, remand is required for compliance with the duty to assist by conducting a thorough and contemporaneous medical examination") (quoting *Stanton v. Brown,* 5 Vet.App. 563, 569 (1993) (internal quotation marks omitted)); 38 C.F.R. § 4.2, 19.9; *Ardison v. Brown,* 6 Vet.App. 405, 407 (1994); *Abernathy,* 3 Vet.App. at 464.

■ That brings us to the question of the propriety of the Board's reliance on the Under Secretary for Benefits' response in this case. The Under Secretary's response can be used by the RO or BVA only to the extent that the response is based on expert evidence, because the application of the mandatory paragraph (e) factors requires special expertise. Hence, the Under Secretary's response to the extent that it is not based on expert evidence that itself considers the paragraph (e) factors is basically a useless document for purposes of the adjudication of a § 3.311 claim. In this regard, it must be recognized that the enactment of the 1984 public law and the promulgation thereunder of the 1985 § 3.311 regulations predated the enactment of the 1988 presumptive service connection provisions in 38 U.S.C. § 1112(c), *see* Radiation–Exposed Veterans Compensation Act of 1988, Pub.L. No. 100–321, 102 Stat. 485 (1988), and the establishment of this Court and judicial review of BVA benefits adjudication decisions, *see* Veterans' Judicial Review Act, Pub.L. No. 100–687, div. A, 102 Stat. 4105 (1988). Hence, sections 5104(a) and 7104(d)(1) and this Court's caselaw were not part of the equation in the 1984–85 time period. However, they now govern the circumstances under which the § 3.311 process for consideration of the paragraph (e) factors can produce a response by the Under Secretary for Benefits that can be used thereafter by the RO and BVA in the adjudication of a § 3.311 claim under current law. We conclude that such use will be consistent with applicable law and judicial decisions only where the Under Secretary's response discusses all of the paragraph (e) factors, *see* 38 C.F.R. § 3.311(c)(1) (response "shall consider the claim with reference to the factors specified in paragraph (e)"); *see, e.g.,* 50 Fed.Reg. at 34,457 (noting that known limitations in dosimetry devices used in dose estimation "shall be taken into account" in that response), and does so based on a discussion of those factors by the Under Secretary for Health (or his or her appropriately designated agent), *see* 50 Fed.Reg. at 15,850 ("[i]n making determinations under proposed § 3.311[ ](c), the Chief Medical Director would consider the factors specified in proposed § 3.311[ ](e)"), or based on some other form of expert evidence that takes those factors into account, such as an outside consultant retained under § 3.311(c)(2) and (d) upon the recommendation of the Director of the National Cancer Institute. *See* 38 C.F.R. § 3.311(f) (§ 3.311 process culminates in adjudication of claim under VA "generally applicable" adjudication provisions).

■ Indeed, we believe that a fair reading of the § 3.311 regulation, in its entirety in the context of existing law, is that it does not permit the Under Secretary for Benefits to render his written response without specific articulation of his or her consideration of the paragraph (e) factors or to decide questions requiring expertise without a basis in competent expert evidence of record; otherwise, the § 3.311 process would not accord with Public Law 98–542 and 38 U.S.C. §§ 5104, 7104(a) and (d)(1). *See Verdon v. Brown,* 8 Vet.App. 529, 538 (1996) (citing *Smith (William) v. Brown,* 35 F.3d 1516, 1526 (Fed.Cir.1994) (citing *LaVallee*

*Northside Civic Ass'n v. Virgin Islands Coastal Zone Management Comm'n,* 866 F.2d 616, 623 (3d Cir.1989)), "for the proposition that regulations must be construed to avoid conflict with a statute if fairly possible"). In this regard, the Court notes that the provisions of § 3.311(c)(i) and (ii) might be read as setting forth two different modes of response. On the one hand, they specify that if the Under Secretary is convinced that "it is *at least as likely as not* [that] the veteran's disease resulted from exposure to radiation in service ... [he or she] shall set forth the rationale for this conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e) of this section"; on the other hand, if the Under Secretary "determines that there is *no reasonable possibility* that the veteran's disease resulted from radiation exposure in service ..., [he or she] shall so inform the regional office of jurisdiction in writing, *setting forth the rationale for this conclusion* ". 38 C.F.R. § 3.311(c)(i), (ii) (emphasis added). In the case of "no reasonable possibility", then, the paragraph (e) factors are not expressly stipulated. However, in light of the clear requirements of the public law and of the § 3.311 regulation promulgated thereunder with regard to the mandatory consideration of all the paragraph (e) factors by the RO and the BVA, the § 3.311(c)(1) requirement that the Under Secretary for Benefits "shall consider the claim with reference to the factors specified in paragraph (e)" (38 C.F.R. § 3.311(c)(1)), and the section 7104(d)(1) requirement for the Board to articulate written reasons or bases for its assessment of the evidence and for all its material determinations, the Court holds that the regulation does not mean to allow *sub silentio* consideration of the paragraph (e) factors by the Under Secretary when he or she reaches a negative determination about the evidence as to a particular claim. *See Verdon, supra.*

In view of the foregoing discussion, the Court holds that the Board's statement of reasons or bases was inadequate and will vacate the Board decision and remand the claim for compliance with Public Law 98–542, 38 U.S.C. § 7104(a) and (d)(1), and 38 C.F.R.

§ 3.311(c), (e), and (f) in accordance with the foregoing analysis.

### D. Allegation of Automatic Denial

The appellant's reply brief acknowledges that § 3.311 does not supply a "presumption" of service connection for radiogenic diseases; she argues, however, that "the regulations have created a methodology for determining the service connection for certain radiogenic diseases ..., and the Secretary has established his own methodology of automatically denying all § 3.311(b) radiogenic disease claims by veterans who served in post-war Japan without considering all the factors the VA is required to consider under § 3.311(b), (c), and (e)." Reply Br. at 11. Essentially, the appellant argues that VA's reliance upon the NIOSH report necessarily negates an assumption that she finds implicit in § 3.311 that *some* veterans who were exposed to ionizing radiation in Hiroshima or Nagasaki could have developed the radiogenic diseases listed under § 3.311(b).

The Court is not deaf to VA's recurrent tolling of the NIOSH report and the DNA's exposure-dose-estimate conclusion based on it to support denials by VA of service connection for radiogenic conditions. It is clear that Congress, in Public Law 98–542, intended the promulgation of regulations that would provide certain procedural claims-development advantages to radiation-exposed veterans who later develop radiogenic conditions, and to the survivors of such veterans, and § 3.311 implements that intent by creating a unique class of claims that receive such claims development upon the satisfaction of § 3.311's four threshold criteria. That section imposes, inter alia, requirements that VA seek a dose estimate from then DNA in the case of veterans who served in Hiroshima or Nagasaki, Japan (§ 3.311(a)(2)(ii)), that it refer such a claim to the Under Secretary for Benefits when the DNA dose estimate is positive (§ 3.311(b)(1)), and that it refer to an independent expert a claim where a dose estimate from a "credible source" conflicts with "official military records" (§ 3.311(a)(3)). And, as discussed in part II.C., above, it requires that the paragraph (e) factors be considered in the adjudication of all cases, on the basis of expert-opinion evidence consider-

ing those factors, and that those factors then be part of the Under Secretary for Benefits' response provided to an RO under § 3.311(c) (if that response is to be considered in the adjudication of the claim) and ultimately be addressed in the RO decision and any BVA decision adjudicating service connection in such a § 3.311 case.

However, insofar as 38 C.F.R. § 3.309(d) provides a list of diseases that *are* presumed to be service connected in radiation-exposed veterans, it is plain that the procedural advantages in § 3.311—which involve conditions *not* presumed to be service connected— are not necessarily incompatible with a conclusion that a § 3.311(b) radiogenic condition is not service connected. In short, although § 3.311 implies that *some* radiogenic conditions identified under that section will be service connected in *some* radiation-exposed veterans, there is nothing necessarily incompatible between the procedural advantages granted under that section and the regular DNA conclusion that no service personnel *in Hiroshima and Nagasaki* were exposed to greater than 1 rem of radiation and the consequent—and repeated—medical conclusion in reliance on that dose-reconstruction conclusion that that exposure dose was insufficient to cause a given cancer listed in § 3.311(b)(2). That Congress in Public Law 98–542 and VA in § 3.311 have provided veterans who served in Hiroshima and Nagasaki and their survivors with certain procedural advantages in attempting to present and develop direct-service-connection claims does not mean that any of those claims necessarily have merit. That is what the claims-development process under § 3.311 is designed to determine, just as is the duty to assist that attaches under section 5107(a) as to well-grounded claims, regarding which the Court has emphasized:"The amount of evidence sufficient to make a claim well grounded differs from the amount sufficient for an award of service connection", *Meyer v. Brown,* 9 Vet.App. 425, 432 (1996); "to be well grounded a claim need not be supported by evidence sufficient for the claim to be granted. Rather, the law establishes only a *preliminary* threshold of plausibility". *Robinette,* 8 Vet.App. at 76; *see also Alemany, supra* (holding medical evidence as to nexus

to service expressed as "possible" suffices for that aspect of well-grounded-claim requirements). It must be remembered that the § 3.311 process does not establish a separate specie of radiation-exposure claims but only a special claims-development process for showing direct service connection for certain specified radiogenic diseases. *See* 38 C.F.R. § 3.311(f). Thus, after claims-development occurs under § 3.311 for a radiation-exposure claim, ultimately either an evidentiary presumption or competent evidence must show direct service connection—that the veteran's current condition was incurred in or aggravated by service—or the claim must be disallowed. *See* 38 U.S.C. §§ 1110; 1112, 5107(b) (equipoise standard); 38 C.F.R. §§ 3.307(a), (d), 3.309(d), 3.311(f).

### E. Reliance Upon DNA Report and Dr. Mather's Opinion

The appellant also contends, in reliance upon the Court's decision in *Thurber,* that the BVA improperly relied upon the NIOSH report cited by the DNA and the reports cited in Dr. Mather's opinion without providing the appellant an opportunity to respond. However, to the extent that the Board did rely on those reports independent of the medical opinions citing them, *see* R. at 7–9 (Board cites reliance by the DNA and Dr. Mather on those reports but apparently bases its conclusion upon the ultimate conclusions of the DNA and Dr. Mather), there was no *Thurber* violation. As we have seen, *Thurber* imposed an advance-notice obligation on the Board with respect to "any evidence developed or obtained by it subsequent to the issuance of the most recent [SOC] or [SSOC]". *Thurber, supra.* In the instant case, even if the Court were to conclude that the Board had "relied" on the reports in question—an unlikely proposition in light of its conclusion in *Bowey, supra,* that documents so cited in a medical opinion or treatise before the Board were not themselves before the Board—they were not evidence "developed or obtained by it subsequent to the issuance of the most recent" SSOC. *Thurber, supra.* Subsequent to the DNA report, the RO in September 1992 issued an SOC citing the DNA report and the NIOSH report cited therein (R. at 116), and

subsequent to Dr. Mather's opinion the RO in August 1993 issued an SSOC citing that opinion and the reports cited therein (R. at 144). Our caselaw does not require more. *See Velez v. West*, 11 Vet.App. 148, 155 (1998) (*Thurber* error "not implicated" where "***BVA did not rely on evidence obtained after the issuance of the most recent SSOC***" (emphasis added in *Velez*)); *Bowey, supra.*

Moreover, the Court notes again that the Board "may not substitute its own medical judgment for independent medical evidence". *Rollings, supra.* The Court can find no provision in statute or regulation that would permit an RO or the BVA—without benefit of medical or scientific evidence of record—to make its own independent dose estimate or opine that a dose of less than 1 rem caused a given cancer. In the instant case, the BVA relied upon the medical and scientific evidence before it—the DNA dose estimate and Dr. Mather's medical opinion. The appellant objects to the Board's reliance upon a "one size fits all" DNA radiation dose reconstruction (Reply Br. at 11); however, ***no other cognizable evidence was before the Board*** in this case. Consequently, there is no merit to the appellant's contention that "VA's reliance on that dose estimate ... violates the regulation", Reply Br. at 12. *Cf. Davis, supra.* The error in the Board's decision is not in its choosing to rely upon the DNA dose estimate or Dr. Mather's opinion—which evidence it could not, in any event, refute in principle absent competent contrary evidence—but in its reliance upon an incomplete medical opinion that made impossible in practice for it to provide an adequate statement of reasons or bases under section 7104(d)(1) for its decision in terms of § 3.311(e).

As a final matter, the appellant argues that the DNA dose estimate and Dr. Mather's opinion are inherently incredible and that VA has not established Dr. Mather's qualifications for rendering an opinion in a radiogenic disease case. Reply Br. at 13–16. The Court notes that there is nothing on the face of the DNA report or Dr. Mather's opinion to suggest that they are "inherently" incredible. *See Rucker v. Brown*, 10 Vet. App. 67, 72–74 (1997) (theory that veteran's cancer was caused by nonionizing radiation not "inherently incredible" where supported with medical articles and opinion); *see also id.* at 77 (Steinberg, J., concurring in part and dissenting in part) (evidence "inherently incredible" only where it is "*on its face ...* so far beyond the pale of reason that reasonable minds could not but agree that it is incredible[ ] or beyond the competence of the witness (that is, testimony on a subject about which the witness has no personal knowledge or expertise whatsoever")). Although a physician's scientific credentials may have a bearing upon the credibility of his or her opinion when the merits of a case are properly reached, *cf. Robinette*, 8 Vet.App at 75–76 (evidence to be presumed credible when making determination of well groundedness), and although such credibility is made a particular issue in § 3.311 claims by that regulation itself, *see* 38 C.F.R. § 3.311(a)(3), (a)(3)(ii) (requiring that dose estimate provided by claimant be from "credible source"), the appellant raised no challenge at the Board to Dr. Mather's credentials to conclude that "[t]he veteran's dose was much lower than the cited value [in the DNA report]", R. at 134. Nor did the appellant challenge at the Board the process by which the DNA dose estimate was prepared. *See Davis, supra.* We will thus not address the appellant's contentions made first on appeal to this Court. *See Carbino v. Gober*, 10 Vet.App. 507, 510 (1997) (Court declines to address issue not raised to Board); *Morgan* and *Davis*, both *supra.* Upon remand, the appellant will be free to seek a specification of the credentials of any medical expert upon whom the Board proposes to rely and to challenge the appropriateness of any evidence on which the Board proposes to rely. *See Sutton v. Brown*, 9 Vet.App. 553, 564 (1996) (as to "fair process" principles required in VA claims-adjudication process); *Austin v. Brown*, 6 Vet.App. 547, 551 (1994); *Thurber*, 5 Vet.App. at 126 (BVA required to give notice of medical and scientific evidence upon which it proposes to rely); *see also Godwin*, 1 Vet.App. at 425 (claimant entitled to Board response "one way or the other" with explanation when Board rejects assistance sought).

## F. Miscellaneous

█ The Court notes that it may not consider and has not considered documents that the appellant attached to her pleadings that were not included in the record before the Board. *See Brock v. Brown,* 10 Vet.App. 155, 159 (1997); *Nici v. Brown,* 9 Vet.App. 494, 497–98 (1996); *see also* 38 U.S.C. § 7252(b) ("[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board"); *Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990).

## III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the pleadings of the parties, the Court vacates the BVA decision and remands the matter of the veteran's service connection for colon/rectum cancer for section 1310 DIC purposes for expeditious further development and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1310, 5107(a), (b), 7104(a), (d)(1), 7261; Pub.L. No. 98–542; 38 C.F.R. § 3.311; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim, *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992), and to seek the medical treatises and other material in VA's possession that she believes should have been included previously in the record. A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.

HOLDAWAY, Judge, dissenting:

I disagree with the way the majority rewrites the language of 38 C.F.R. § 3.311(c)(ii). The majority opinion holds that the Under Secretary for Benefits must address all of the subsection (e) factors in every expert opinion rendered. However, as the majority concedes, the express language of the regulation requires the Under Secretary to "includ[e] an evaluation of the claim under the applicable factors specified in paragraph (e) of this section" only if "the Under Secretary for Benefits is convinced sound scientific and medical evidence supports the conclusion it is at least as likely as not the veteran's disease resulted from exposure to radiation in service." 38 C.F.R. § 3.311(c)(1)(i). In striking contrast, if the Under Secretary "determines there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service," then subsection 3.311(c)(1)(ii) requires only that the Under Secretary "set[ ] forth the rationale for this conclusion."

The absence of a requirement that the Under Secretary address all of the subsection (e) factors in writing cannot be construed as accidental. The Secretary clearly knew how to include such a requirement expressly, but did not. *See* 38 C.F.R. § 3.311(c)(1)(i); *see also* 38 C.F.R. § 3.311(d)(3) (outside consultants required to provide written evaluation of all factors outlined in (e), regardless of conclusion). Furthermore, the regulation does not require or imply a need for all factors to be explicitly reviewed in writing in order for the regulation to function logically. In some cases it would be unnecessary to analyze all of the factors when the expert found that some of the factors were dispositive. This case is a prime example. The combination of probable dose received, 38 C.F.R. § 3.311(e)(1), the nature of the cancer involved, 38 C.F.R. § 3.311(e)(2), and the appellant's age, 38 C.F.R. § 3.311(e)(4), were sufficient, according to Dr. Mather, to rule out any reasonable possibility that the veteran's cancer was related to service exposure. *See* R. at 134. Therefore, it appears from the language of Dr. Mather's expert report that no other

factors could have significantly impacted the probability that the appellant's condition was caused by in-service exposure. In other words, the cited factors were so conclusive that they essentially mooted the factors not expressly mentioned in writing. Consequently, this case demonstrates that there is a rational reason why the Secretary promulgated section 3.311 in a way that it distinguishes between cases where every factor is relevant (when the Under Secretary finds that the total circumstances indicate that the appellant's disease was caused by service) and cases where fewer than all factors may be conclusive (when the Under Secretary finds no nexus to service).

The majority suggests that if the Court were to read section 3.311(c)(ii) to mean only what it says, then the Court would have to set it aside as contrary to section 5(b)(2)(A)(iii) of Public Law 98–542. That law directed the Secretary to promulgate regulations "specifying the factors to be *considered* in adjudicating issues related to whether or not service connection should be granted" based on a disease allegedly caused by in-service exposure to ionizing radiation. *Id.* The majority argues that the Under Secretary's failure to provide a written discussion of all of the factors would impermissibly frustrate the Board's ability to provide adequate reasons and bases for a decision which relies on the Under Secretary's expert opinion.

The majority's conclusion is a non sequitur for at least two reasons. First, the fact that the Under Secretary's expert opinion does not address all of the subsection (e) factors in writing does not mean that the BVA cannot fully evaluate the weight of the expert opinion in the context of a given case. In other words, the reasons and bases requirement is a duty imposed on the BVA, not on expert witnesses, and compliance with that requirement turns on the quality and accuracy of the BVA's analysis.

Second, Public Law 98–542, § 5(b)(2)(A)(iii) does not contain a requirement that the Board must analyze all factors listed in the Secretary's regulations in order to satisfy the reasons and bases requirement. That section merely requires the Secretary to promulgate regulations which specify the "factors to be *considered* in adjudicating issues relating to whether or not service connection should be granted in individual cases." *Id.* (emphasis added). This language does not require the Secretary to establish a single set of factors which must be considered in every radiation case, much less a set of factors which must be discussed individually in writing. To the contrary, the law gives the Secretary a broadly stated charge to construct rules which govern whether to grant service connection. That requirement squares easily with the current regulation which states that under certain conditions all factors must be discussed in writing, but in other circumstances they need not be. *See* discussion *supra.* Thus, the majority opinion misreads the public law, indeed, rewrites it by adding a requirement that all factors promulgated by regulation must be discussed in every section 3.311(c) case. The majority then relies on this fictional requirement to argue that the regulation must include the same in order to comply with the public law. Consequently, the majority's conclusion, to the effect that the obvious difference in language between section 3.311(c)(i) and 3.311(c)(ii) is nothing more than cosmetic, is without legal basis. Furthermore, because there is no ambiguity in the language of the regulation or statute, and because the regulation is logical as written, there is no need for the Court to modify a rationally based regulation—even if it were inclined to do so.

In this case, the BVA justifiably found that the only evidence of record was contrary to the proposition that the veteran's disease was caused·by in-service exposure, and it articulated such finding with adequate analysis. Thus, the BVA clearly had a plausible basis for its conclusion that the appellant had failed to provide evidence of a nexus between the veteran's disease and the veteran's service, and it gave adequate reasons and bases for its decision. Therefore, the Board was fully capable of complying with its duty to provide adequate reasons and bases without the existence of an expert opinion from the Under Secretary which discussed in writing all of the subsection (e) factors. I would

affirm the Board's denial of the claim based on its finding that there was no evidence that in-service exposure to ionizing radiation caused the veteran's disease.